STATE of Missouri, Respondent,

v.

Gerald M. BUSHMAN, Appellant.

No. WD 32825.

Missouri Court of Appeals,
Western District.

Sept. 21, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 2, 1982.

Edward L. Fitzgerald, Robert S. Theding-er, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and CLARK and MANFORD, JJ.

CLARK, Judge.

Gerald M. Bushman was jury tried and convicted of robbery in the first degree and he was sentenced to a term of 14 years. In this appeal, he raises three points: (1) a motion to suppress testimony by identification witnesses was erroneously denied, (2) a mistrial should have been declared because the jury panel was tainted when veniremen made certain comments during voir dire, and (3) an impermissible inference was suggested by testimony concerning Bushman's arrest in Arizona. Affirmed.

The evidence adduced at trial established that the First National Bank of Independence was robbed November 14, 1979 by two men, one of whom took a position in the center of the bank lobby armed with a hand gun. The other man, being the taller of the two, demanded and received money from the tellers. According to witnesses, three to ten minutes elapsed from the time the robbers entered the bank until, they fled with the money. The police arrived soon after the offense was committed. They had been summoned by one of the tellers who sounded the alarm before the robbers entered the bank. Upon a search of the area, the police recovered the money taken which was in a brown paper bag. An explosive device had been deposited in the bag with the money and had colored all the contents with red dye. The robbers, however, were not found at the scene.

Three of the bank tellers had observed the robbers during commission of the crime and all assisted a police artist in preparation of a composite drawing of the taller robber. Suspicion focused on Bushman as the individual portrayed in the drawing, but he could not be found at his residence in Jackson County nor did inquiries of family, friends and at his place of employment yield any information. Ultimately, Bushman was apprehended in Phoenix, Arizona where he was arrested in December, 1980.

In his first point, Bushman claims the identification procedures under which the three teller-witnesses selected Bushman as the taller robber were impermissibly suggestive, thus tainting the reliability of their testimony and requiring that the evidence be suppressed. The facts on which the contention is based are unusual and must be recounted in some detail.

As noted above, the three witnesses collaborated immediately after the robbery to pool their recollections and produce a facial portrait of the robber drawn in pencil by a police artist. Thereafter, some fourteen months elapsed before Bushman was returned from Arizona. During the intervening time, the witnesses viewed neither suspects nor photographs. After Bushman had been arrested and returned to Jackson County, the three bank tellers were called to testify at a preliminary hearing. While gathered in a witness room prior to giving their testimony, the tellers were provided

access to the police investigation file on Bushman, ostensibly for the purpose of re-reading the statements each gave following the robbery. The contents of the file included, among other papers, a photograph of Bushman and the composite drawing.

A police officer spoke with the bank tellers in the witness room as to the progress of the case. He informed them the shorter of the two robbers was in jail, Bushman was the taller of the two and Bushman and the shorter man were brothers-in-law. The witnesses then proceeded into the court room and identified Bushman as one of the bank robbers. This same evidence, given at the preliminary hearing, was also given by the witnesses when they testified at trial.

Arguing that his identification by the teller-witnesses was prompted by display of his photograph immediately before the hearing, coupled also with suggestive comment by the police officer indicating confirmation of his implication in the offense, Bushman contends the eyewitness identifications should have been suppressed. While Bushman cites only Missouri cases which discuss various aspects of suggestive identification procedures, it is apparent he relies on the line of authority stemming from *Stovall v. Deno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). It was there held that an accused is denied due process when an identification confrontation is so unnecessarily suggestive as to be conducive to irreparable mistaken identification. The application of this principle to suggestive photographic arrays was enunciated in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In support of his contention that suggestive procedures and not the recollection of the witnesses prompted their identification, Bushman points to the substantial length of time which had passed between the crime and the testimonial confrontation, the display to the witnesses of a single photograph and the assurance offered the witnesses by the police that other facts reinforced identification of Bushman as one of the robbers.

■ In the recent case of *State v. Sanders,* 621 S.W.2d 386 (Mo.App.1981), this court noted that claims of suspect procedures employed to induce out-of-court identifications are evaluated in a two step process. It is first necessary to determine if, in fact, the procedure was impermissibly suggestive i.e., did the photographic display or the line up and the accompanying circumstances predetermine the resultant identification. It is of course inevitable that some suggestiveness be conveyed in any out-of-court identification. The witness obviously must assume that suspicion has centered on at least one of the persons presented else there would have been no occasion to seek identification. Impermissibility of suggestiveness is therefore a matter of degree to be assessed based on the facts of the case.

The second step of the process, once an impermissibly suggestive procedure has been employed, is to evaluate the reliability of the in-court identification. This second step assumes that in-court identification may yet be reliable despite the intervention of suggestive efforts to influence the eyewitness testimony. As the opinion in *State v. Sanders, supra,* states, it is rare that the claimed suggestiveness will so taint the testimony as to remove from the fact finder the opportunity to evaluate the reliability of the identification. The impact of pre-trial events upon the certainty of identification is therefore an issue usually left to the jury.

■ In the present case, the procedures employed to assure identification of Bushman by the witnesses at the preliminary hearing were impermissibly suggestive and, were it not for other facts unique to this case, those procedures would have required suppression of the testimony. The display of the police file containing the one photograph of Bushman and the recounting of evidence calculated to assure the witnesses that Bushman was otherwise linked to the crime coupled with the fact that the witnesses had not previously selected Bushman from a photographic array or line up partake of the degree of suggestiveness which the authorities condemn. The composite drawing prepared by the police artist, however, in juxtaposition with the photograph

of Bushman, and particularly the quality of the photograph, ameliorate an otherwise impermissibly suggestive identification confrontation.

In contrast to that which would normally be expected, it appears here that the composite drawing, prepared as it was from the collective recollections of three witnesses, was a remarkable likeness of Bushman. Moreover, it seems that the photograph was of unusually poor quality. As the trial judge himself stated when the motion to suppress the identification was heard, "From my observation of the drawing and of the photograph, the drawing is very much more like the Defendant than the photograph. The photograph is at best a blurred photograph."

The effect of the drawing on the identification issue in this case is twofold. In the first place, it defies reason and logic to contend that a blurred photograph influenced the witnesses to mistakenly identify Bushman. The witnesses had before them the composite drawing, a likeness of Bushman, prepared at their own direction recording their recollections as to the facial characteristics of the robber. In the trial judge's observation, it was the drawing and not the photograph which bore the greatest similarity to Bushman. If examination of the police file produced any result it was by virtue of the drawing, not the photograph, and no claim is made that the witnesses were not entitled to see the drawing before giving their testimony.

Secondly, the suggestive effect of the identification procedures employed before the preliminary hearing were, in light of the relative values of the drawing and the suggestive procedures, matters to be weighed by the jury in assessing the credence to be given the witnesses' testimony. All relevant evidence in this respect, including inconsistencies in the verbal descriptions given by the witnesses to the police and upon which Bushman lays stress, were before the jury. We can not conclude that such attempts as were made by the police before the preliminary hearing to reinforce identification of Bushman by the witnesses were, under the facts here, conducive to irreparable mistaken identifications. The trial court did not err in submitting that issue to the jury.

Bushman next contends he was entitled to a mistrial and a new jury panel from which to make the jury selection because of prejudice emanating from responses by two veniremen during voir dire. Answering questions by Bushman's attorney as to their reaction were Bushman not to testify in his own defense, both prospective jurors indicated their opinions to be that such would be "a little unusual" and would prejudice Bushman in their evaluation of the case. Both veniremen were stricken for cause, but a request for a new jury panel was denied.

The general rule is that disqualification of an individual juror because remarks he has made indicate bias or prejudice is not a sufficient ground for challenge of the entire jury panel. *State v. Browner,* 587 S.W.2d 948, 951 (Mo.App.1979). The evaluation of the effect a statement made by a venireman may have had upon other members of the jury panel is a matter entrusted largely to the trial court's discretion. *State v. Turner,* 462 S.W.2d 723, 725 (Mo.1971). In searching to discover during voir dire the hidden predilections of individual veniremen, it is inevitable that responses evincing bias will be extracted from time to time. If the general rule did not admit of such responses without precipitating a disqualification of the entire jury panel, a chilling effect would be imposed on the voir dire process. *State v. Browner, supra.*

In the present case, not only was the trial judge in a better position to observe what effect the statements of the two veniremen may have had on the jury panel, but the record indicates no basis to believe there was any effect at all. After defense counsel had obtained from the two prospective jurors the acknowledgement that Bushman's failure to testify would prejudice them, the inquiry was pursued as follows:

"Now, I want to ask, does anyone else on this panel, anybody else feel that way (no response). I see no other show of hands, I presume no one else holds that feeling."

■ It is the burden of appellant who contends the jury panel was prejudiced to demonstrate the basis therefor. This record not only shows no prejudice on the part of other members of the jury panel but includes affirmative proof to the contrary. The trial judge did not abuse his discretion in refusing the motion to discharge the jury panel.

■ In his final point, Bushman complains of the state's evidence, admitted over his objection, establishing his absence from his former residence in Kansas City and his subsequent arrest in Arizona. This, he argues, permitted the jury to speculate that he had fled to avoid arrest and prosecution for the bank robbery.

The evidence to which Bushman objects was sharply limited in scope. The detective who investigated the crime testified that he attempted to locate Bushman in Kansas City because he had a warrant for his arrest. Inquiry at the apartment where Bushman and his wife had lived disclosed that the couple had moved and former employers of Bushman had no knowledge of his whereabouts. The detective then testified as to information later received that Bushman could be found in Arizona and his arrest there which followed. In addition, a custodian of police records testified to confirm that Bushman had been arrested in Phoenix and transported to Kansas City to stand trial. Bushman argues the mere fact of his presence in Phoenix at the time of his arrest was not alone sufficient to predicate an inference of flight to avoid arrest and prosecution.

Bushman cites cases which condemn argument and jury instruction on the presumption of guilt inferable from flight when the only evidence of flight is the time and place of defendant's arrest. Those cases do not aid him here because the state was not permitted to argue flight and no instruction was given the jury as to a presumption arising because Bushman was arrested in Arizona. Only speculation and surmise support the claim that the evidence in question was regarded by the jury as proof of flight with an associated inference of guilt.

Assuming that the facts as to the time and place of Bushman's arrest were indicative of flight to avoid arrest, it does not thereafter follow that the evidence should have been excluded. As the court pointed out in *State v. Medley,* 588 S.W.2d 55, 59 (Mo.App.1979), it is unexplained flight which indicates a consciousness of guilt. A defendant is entitled to offer evidence tending to show that his removal from his usual habitat was for reasons other than guilt and fear of prosecution. In the present case, Bushman did not testify and the jury was therefore left with the minimal facts that he had lived in Kansas City until a date approximating the date of the bank robbery, but had left soon thereafter to be eventually apprehended more than a year later in Arizona. As defense counsel correctly points out, many reasons other than guilt could have explained Bushman's departure from Kansas City. So too, however, do the same facts, again unexplained, suggest a reason attributable to involvement in the robbery.

■ The circumstances attending arrest are admissible and may be considered by the jury on the issue of guilt. *State v. Franklin,* 591 S.W.2d 12 (Mo.App.1979). Evidence of flight is circumstantial evidence to be considered by the jury along with other evidence bearing on commission of the crimes charged. *State v. Medley, supra.* In the present case, the state's case included three witnesses who identified Bushman as one of the bank robbers. We can not conclude that evidence as to the time and place of Bushman's arrest, particularly because of the substantial time which had elapsed, was not proper evidence for the consideration of the jury.

The judgment is affirmed.