STATE of Missouri, Plaintiff-Respondent,

v.

Craig Anthony ARNOLD, Defendant-Appellant.

No. 46761.

Missouri Court of Appeals, Eastern District, Division Four.

May 29, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1984.

Application to Transfer Denied Sept. 11, 1984.

Debra Buie Arnold, St. Louis, for defendant-appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of rape and sodomy and the resultant consecutive 15 year sentence on each. We affirm.

The victim, a twelve year old girl, was on her way to school on a residential street in St. Louis. She was approached from behind by a man wearing a ski mask and carrying a knife. He forced her into a vacant house where he engaged in at least two acts each of sexual intercourse, buggery and fellation. During these encounters the attacker initially placed a thin piece of cloth over the victim's eyes, through which she could see, and later substituted her panties as a blindfold. The victim was able during the attack, however, to see the lower portion of the attacker's face when he pulled the mask up to his nose, and had a brief glimpse of his profile when he removed the mask as he was leaving. The description of her attacker given by the victim was generally descriptive of defendant. She also saw a gold or silver bracelet worn by the man. In a line-up conducted on the morning of the attack the victim identified defendant as her attacker; she made a similar identification at trial.

A resident of the street where the attack occurred identified the defendant's automobile as having been parked in the vicinity of the vacant house at approximately the time of the attack but could not identify defendant as the man who entered the vehicle and drove away. When questioned by police about the whereabouts of his vehicle at the time of the attack defendant gave an answer which the jury could have found to be a fabrication. He also took actions which a jury could find to be an attempt to flee. A bracelet identified by the victim as the one worn by the attacker was found in the automobile. Defendant's thumb print was found on the wood floor of the house in the location of the rape. Defendant denied ever being in the vacant house. Semen in the outer pants of the victim could have come from defendant. A moist semen sample found on the floor of the house could

not have. Spermatozoa were identified in the vagina and rectum of the victim but could not be typed. Defendant presented family members to testify to an alibi.

Defendant's first point premises error on the failure of the trial court to suppress the pretrial lineup identification on the basis that it was suggestively obtained and thereby undermined the in-court identification making it inadmissible also. This contention is based upon testimony of the victim concerning a statement made to her by a police officer at the lineup. There were four men in the lineup. The victim quickly eliminated the men in positions 3 and 4. What then transpired is set out in the record as follows:

"Q. What happened after you looked at each of the men?

A. First I said the two men at the ends weren't—aren't the ones. And it was two men on the other side. And I told all of them come back up and say something.

Q. All of them or just two of them?

A. Um, I think it is—was just the two of them. And then I picked him.

Q. Okay. At first didn't you tell officer—the officer who was in there with you that No. 2 looked like him *too*?

A. Yes.

Q. What did he say when you told him that?

A. He told me to—that to think about it and to ask them the—say else I needed for them to say.

Q. So after you said No. 2 looked like him, the policeman that was there told you to think about it and do what?

A. Hesitate. Think about it. And he told me to—if I wanted them to say anything else then to tell him ....

Q. After this officer told you to think about it and you could ask them to say something, what did you do next?

A. I didn't do anything. I said that he was the one.

Q. Which one, at this time, did you say was the one?

A. The one who was first ...

Q. But you did that after the officer told you to think about it. Is that right?

A. Yes." (Emphasis supplied).

Defendant contends that this testimony demonstrates that the victim initially identified participant No. 2 and that the police officer's comment served to cause her to change her identification. We cannot so read the record. The question which first premised the possibility of identification of participant No. 2 utilized the word *"too"* meaning both No. 1 (defendant) and No. 2 (defendant's brother) bore a resemblance to her assailant. It was not an identification of No. 2 as the attacker. The remainder of the testimony was premised upon this original question and answer. We find nothing to support the conclusion that the victim initially identified defendant's brother and then changed her mind. Nor can we place any dire motive or improper suggestion in the police officer's remonstrance to the victim to take her time and think about it. It is to be hoped that any witness making an identification at a lineup would take their time and think about the identification. Here the victim found a resemblance to her attacker in two men in the lineup. The police officer's statement can only be interpreted as advising the victim to take her time before making a definite determination. We find no improper suggestiveness in the lineup procedures. Having found no such suggestiveness we need not address defendant's further contention that the lineup tainted the in-court identification. *State v. Sanders*, 621 S.W.2d 386 (Mo.App.1981) [1, 2]; *State v. Bushman*, 642 S.W.2d 117 (Mo. App.1982) [1].

Defendant's other contention is that the evidence was insufficient to make a submissible case. This attack is based upon challenges to the efficacy of certain of the evidence presented by the state and explanations of other possible meanings of that evidence. The resolution of those matters was for the jury. *State v. Strickland,*

609 S.W.2d 392 (Mo. banc 1980) [1–5]; *State v. Nash*, 621 S.W.2d 319 (Mo.App. 1981) [1]. Defendant was identified by the victim on the basis of both his appearance and his voice. His automobile was seen in the vicinity of the crime. The bracelet worn by the attacker was found in his automobile. He was placed at the rape scene by his fingerprint, the presence of which he was unable to account for in his testimony. His conduct during the investigation evidenced efforts at concealment and an attempted flight. The semen sample on the victim's clothing could have come from defendant. While the other semen sample found in the vacant house points to the presence of another it establishes only that at some time shortly before or after the crime a male other than defendant was on the premises. It does not establish that defendant was not also there or that he did not commit the attacks upon the victim. The evidence was sufficient. *State v. Nash, supra,* [1–6].

Judgment affirmed.

GAERTNER, P.J., and STEPHAN, J., concur.