STATE of Missouri, Respondent,

v.

Germon A. EVERAGE, Appellant.

No. WD 61030.

Missouri Court of Appeals, Western District.

Jan. 13, 2004.

Ellen H. Flottman, Columbia, MO, for Appellant.

John M. Morris, III, Jefferson City, MO, for Respondent.

Before SMART, P.J., ULRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

A jury convicted Germon Everage for second degree murder as an accomplice in the beating death of Obang Oman. Everage was sentenced to sixteen years imprisonment. On appeal, he asserts the trial court: (1) abused its discretion in denying his motion to quash the jury panel; and (2) plainly erred in submitting a jury instruction that omitted language required by the Missouri Approved Instructions (MAI). Finding no prejudicial error on either point, we affirm the conviction and sentence.

### MOTION TO QUASH JURY PANEL

In his first point on appeal, Everage claims the trial court abused its discretion in denying his motion to quash the jury panel. He contends the panel was "tainted by a lengthy colloquy regarding concerns the venire had about [Everage] having their addresses and telephone numbers, [Everage] taking notes during voir dire, their fear of [Everage], and the possibility of their verdict being reversed on appeal."

The trial court is afforded wide discretion in determining whether a jury panel should be quashed as a result of a

venireperson's comments. *Smith v. McDonald,* 753 S.W.2d 336, 338 (Mo.App. E.D.1988). The court must consider whether the comments are so inflammatory and prejudicial as to taint the entire jury panel and thereby deprive the defendant of a fair trial. *State v. Kelley,* 83 S.W.3d 36, 42 (Mo.App. W.D.2002). Absent an abuse of discretion, we must affirm the trial court's ruling. *Id.*

During voir dire, Everage sat with his counsel as he reviewed the jury questionnaires and wrote notes on a tablet. After the jury panel was selected, the trial judge learned a juror was concerned that the defendant might have obtained personal contact information from the jury questionnaires. The judge assured the panel that the addresses and telephone numbers of venirepersons were blocked out on the copy of the jury questionnaires given to the defendant. Another juror asked to see the notes taken by the defendant during voir dire. The judge denied the request and sent the panel to the jury room to consider whether they felt "somewhat threatened or at siege."[1] The judge invited the jurors to "come back down individually" and voice any specific concerns outside the presence of the other panel members.

One juror returned to the courtroom to inquire whether defense counsel could review Everage's notes and report whether he had recorded any information about the job locations or family members of the venirepersons. The judge denied the request, explaining that Everage was entitled to privileged communications with his attorney. The judge further advised the juror:

Well, I guess there are two questions that ultimately we have to ask. . . . And,

question number one is, bluntly, are—are these concerns going to affect your ability to sit fairly and impartially? And, can you—can you sit and listen to the evidence fairly and impartially and without fear and come to a just and honorable verdict? . . . You don't have to—you don't have to answer right now, I'd like you to think about it.

None of the other jurors expressed individual concerns. When the jury panel returned to the courtroom, the judge allowed the prosecutor to conduct further voir dire as follows:

. . . And, the question that we have for each of you is whether the fact that this topic was raised this morning is going to impact your ability to be fair to both sides, . . . . And, with regard to that, let me also tell you this. I expect that there will be testimony that on the day of the crime, the defendant and his brother approached one of the witnesses in the case and said to her something to the effect, "You'd better not say anything, you'd better not say anything," something to that effect.

Okay, now I don't know whether that ties in with your fears today or not. But, I expect there's going to be evidence in that regard and I want you to search your souls carefully. And, again the ultimate question is, is anything about this going to affect your ability to be fair and impartial to both the State and Mr. Everage in listening to the evidence and rendering a decision and verdict in this case.

The panel members were asked to raise their hands if they felt they could not "fairly listen to and judge the evidence in

---

1. We question the wisdom and propriety of having jurors discuss among themselves concerns about their personal safety. However, because this issue is not addressed in the Point Relied On, we do not consider it in this appeal.

the case." None of the jurors raised their hands.

The trial judge also permitted defense counsel to conduct the following voir dire regarding the effect of the colloquy:

> ... And, I guess I would pose the question again. Is there anybody here that believes that based on what we've talked about and the information you've been provided, that you're going to have, you're going to have a problem being fair and impartial in this case? And, that's—and let me say this caveat. It's okay, everybody is not right for every case.
>
> That doesn't mean you're not a good person or not a good juror or anything like that. It just means that if this causes you a problem, now's the time to know. So, let me ask that again.
>
> Is there anybody here who feels that they have a problem being fair and impartial in this case, based on everything we've talked about to this point? If I could see the hands of anyone?

None of the jurors raised their hands in response to defense counsel's question.

After the jurors were dismissed for lunch break, defense counsel moved to quash the jury panel based on the concerns expressed about the defendant.[2] The trial court denied the motion because none of the jurors ultimately indicated that the expressed concerns would affect their ability to fairly and impartially decide the case. The judge explained:

> From my standpoint, and I've been here 14 years, and I think this is probably one of the most forthright and straightforward jury panels we've had. And, I think for them to raise the obvious concerns that all citizens have when they come in to serve as jurors, is being forthright and just being realistic.
>
> ... the jury was sworn to tell the truth. And, it would be disbelieving their oath of office, their pledge to tell us the truth based on their solemn word of honor to—to say they weren't truthful. And, that's what we're saying if we say that they didn't respond affirmatively to not once, not twice, but three questions regarding the effect of all of this on their ability to sit and fairly and squarely and impartially determine the facts in this case.
>
> ... I believe that the questions were clear, that the answers were clear. And, I defer to their oath of office. And, therefore, respectfully, the motion to quash the jury panel ... is respectfully denied.

■ In challenging the court's denial of the motion to quash, Everage has the burden on appeal of demonstrating the jury panel was prejudiced against him. *State v. Bushman*, 642 S.W.2d 117, 121 (Mo.App. W.D.1982). This record not only shows no prejudice by the jurors, it actually provides affirmative proof to the contrary. *Id.* Panel members were repeatedly asked whether their observations and discussions about the defendant would affect their ability to impartially decide the case. None of the jurors gave an affirmative response to the question. While the preferable practice would have been to individually poll the jurors, we cannot conclude the court abused its discretion in refusing to quash the jury where there was no showing of prejudice. Point denied.

## JURY INSTRUCTION

■ Everage contends the trial court plainly erred in omitting "sudden passion"

---

2. Alternatively, defense counsel moved to strike the three individual jurors who originally expressed concerns. Everage does not allege error in the trial court's denial of this alternative motion.

language from the second-degree murder instruction, as required by the Notes on Use to MAI–CR3d 313.04. He argues there was evidence he acted with sudden passion as an accomplice in the beating death of Obang Oman and that, in the absence of sudden passion language in the instruction, the jury was not properly directed to consider the lesser included offense of voluntary manslaughter.

Everage seeks plain error review because he failed to object to the verdict directing instruction on second-degree murder. Plain error review of instructional error is warranted when an error so substantially affects the defendant's rights that a manifest injustice results if it is left uncorrected. *State v. McCoy,* 971 S.W.2d 861, 864 (Mo.App. W.D.1998). To rise to the level of manifest injustice, the court must have misdirected or failed to instruct the jury such that the instructional error affected the jury's verdict. *Id.* Appellant bears the burden of establishing manifest injustice. *Id.*

The verdict directing instruction for a second-degree murder charge is set forth in MAI–CR3d 313.04. The Notes on Use (4) for this instruction provide in part:

A homicide that would be murder in the second degree-conventional is voluntary manslaughter if committed under the influence of sudden passion arising from adequate cause. Section 565.023.1(1), RSMo 1994. The burden of injecting this issue is on the defendant. If there is evidence supporting sudden passion from adequate cause, paragraph (Third) must be given.

Paragraph (Third) of MAI–CR3d 313.04 instructs the jury that the defendant can be found guilty of second-degree murder if he *did not* commit the murder under the influence of sudden passion arising from adequate cause. In addition to the inclusion of this language, the court can also offer an instruction on voluntary manslaughter—which requires evidence of sudden passion—if requested by either party. MAI–CR3d 313.04, Notes on Use (4).

To require the inclusion of paragraph (Third) in the second degree murder instruction, there must be evidence of sudden passion arising from adequate cause. *Id.* Sudden passion is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation[.]" Section 565.002(7) RSMo.2000. Adequate cause is defined as "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control[.]" Section 565.002(1).

Everage suggests there was evidence of sudden passion in this case simply because the trial court gave a voluntary manslaughter instruction as a lesser-included offense of second-degree murder. The record reflects the instruction was given after Everage requested it and the State did not formally object. The prosecutor commented, however, that the defendant had not met his burden of showing sudden passion.

Everage fails to point to any evidence in the record indicating that he acted with sudden passion in the beating death of Obang Oman. The trial evidence established that a fight began when Everage's brother, Robert Everage, cheated Oman out of $10.00 during a drug purchase. Oman hit Robert and they continued to exchange blows. Everage eventually joined in to help his brother subdue Oman. Witnesses testified that Robert was principally responsible for the strikes and kicks

that resulted in Oman's death, but Everage had some direct involvement.

Whether or not the victim's conduct could be considered provocative toward Robert, it was never directed toward Everage. Everage became an aggressor against Oman when he joined in the fight. To show sudden passion arising from adequate cause, Everage had to prove the victim took some action to inflame him and that he was not the initial aggressor. *State v. Jacoway,* 11 S.W.3d 793, 798 (Mo. App. W.D.1999). Even under the submitted theory of accomplice liability, there had to be some evidence that Everage had the required mental state to act with sudden passion in attacking Oman. See *England v. State,* 85 S.W.3d 103, 110 (Mo.App. W.D.2002) (mental state of one actor is not imputed to co-actors under accomplice liability theory).

The trial court was not required to submit the second degree murder instruction with the paragraph (Third) because there was no evidence that Everage acted with sudden passion. Even if the sudden passion language had been included in the instruction, the jury's verdict would have been unaffected. The trial court gratuitously submitted a separate voluntary manslaughter instruction which the jury never reached because it found Everage guilty of the greater offense of second degree murder. See *State v. Davidson,* 941 S.W.2d 732, 736 (Mo.App. E.D.1997). There was no prejudicial error, plain or otherwise. Point denied.

The trial court's judgment is affirmed.

All concur.