

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| KEITH MEINERS, | ) | No. ED103861 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Colleen Dolan |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: January 10, 2017 |

## Introduction

Keith Meiners ("Meiners") was convicted on one count of second-degree murder and sentenced to twenty-five years in prison. We affirmed Meiners's conviction on direct appeal. State v. Meiners, 430 S.W.3d 914 (Mo. App. E.D. 2014). Meiners now appeals from the motion court's denial of his amended Rule 29.15[1] motion following an evidentiary hearing. Meiners alleges ineffective assistance of counsel because appellate counsel failed to challenge on appeal the trial court's refusal to submit jury instructions on voluntary and involuntary manslaughter. Because Meiners failed to prove that appellate counsel's performance deviated from that of reasonable counsel under similar circumstances, the motion court did not clearly err in denying Meiners's amended Rule 29.15 motion. We affirm the judgment of the motion court.

---

[1] All rule references are to Mo. R. Crim. P. (2015).

Factual and Procedural History

A grand jury indicted Meiners on one count of first-degree murder, and the case proceeded to a jury trial. Evidence was addressed at trial that Meiners was involved in a romantic relationship with Danielle Buhrman ("Buhrman"), who had previously dated Victim, and that Buhrman often discussed with Meiners her prior relationship with Victim including past sexual encounters.

The State presented evidence that Meiners wanted to invite Victim to his home on the night of Victim's death. After Victim arrived and drank alcohol at Meiners's home, Meiners, Victim, and Justice Brickey ("Brickey") left to attend another party. The group stopped at a gas station, where they met up with several additional partygoers. The group arrived at the party, however, Meiners, Brickey, and Victim left shortly thereafter. As they departed, Meiners told an acquaintance at the party that he would call her if he needed a ride. Meiners, Brickey, and Victim left in Victim's car. Brickey testified that Victim drove, and Meiners sat in the backseat behind Victim.

During the drive, Brickey felt sick and asked Victim to stop the car. Brickey began to dry-heave. A nauseated Brickey then looked over and saw Meiners strangling Victim with duct tape. Brickey testified that Meiners pulled Victim out of the driver's seat of the car and onto the ground. Meiners then stood over Victim and began striking him repeatedly. Victim screamed for Meiners to stop. Brickey stated that he got out of the car and grabbed Meiners, but Meiners knocked his hand away and continued to beat and strike Victim until Victim stopped moving. Brickey described Meiners as looking "out of control" and "filled with rage."

Meiners then asked Brickey to help move Victim. As they began to carry Victim, Brickey started vomiting. After vomiting, Brickey looked up and saw Meiners standing on Victim's chest and talking to Victim. As they left the scene, Brickey heard Meiners state, "I

2

have no more problems. I got rid of my problem." Meiners and Brickey drove Victim's car to a nearby welcome center, and then walked to a gas station where Meiners called an acquaintance for transportation. Meiners explained his need for a ride by claiming that Victim had kicked them out of the car because of a "disagreement" over his sister.

A friend of Meiners testified that the next day Meiners told her that he killed Victim by beating and stepping on Victim's throat while singing a song entitled "Ain't No Rest for the Wicked." The friend also testified that Victim had a knife during the confrontation. Specifically, the friend told police that Meiners claimed Victim had tried to stab Meiners and Brickey with a knife after Meiners pulled him out of his car, but Meiners knocked the knife away. Meiners then continued to beat and strangle Victim. The State also presented forensic evidence showing that Victim's hands and wrists were bound behind his back with duct tape.

The jury was instructed on first-degree and second-degree murder. The trial court refused Meiners's request to submit jury instructions on voluntary and involuntary manslaughter. The jury then found Meiners guilty on one count of second-degree murder. The trial court sentenced Meiners to twenty-five years in prison. We affirmed on direct appeal in Meiners, 430 S.W.3d at 914.

Meiners subsequently filed an amended Rule 29.15 motion, alleging that appellate counsel was ineffective for failing to argue on appeal that the trial court erred in refusing to submit Meiners's proposed jury instructions on voluntary and involuntary manslaughter. The motion court conducted an evidentiary hearing on Meiners's motion.

At the evidentiary hearing, Meiners and his trial counsel testified that they wanted the jury to consider voluntary and involuntary manslaughter. Meiners testified that his appellate counsel discussed with him the refused jury instructions and that she explained to him that she

3

did not present an argument regarding the jury instructions in the appeal because she "didn't feel that it had enough weight."

Meiners's appellate counsel testified that her normal practice is to initially examine the entire legal file, identify the issues raised in the defendant's motion for new trial, and review the file for plain error. Appellate counsel remembered reviewing Meiners's file. She noted that the trial court refused to submit jury instructions on both voluntary and involuntary manslaughter. Regarding the issue of voluntary manslaughter, appellate counsel testified that she "never had a clear idea of what happened, but I didn't see a grounds for stating that there was evidence that he acted under sudden passion." Regarding the issue of involuntary manslaughter, appellate counsel stated that she did not raise the issue on appeal because she "didn't think this fact pattern, any of the facts that were adduced at trial fit into a scenario of recklessness, that there was not evidence for that." Appellate counsel stated that the brandishing of a knife during an altercation might support a voluntary manslaughter instruction, but further testified that these types of cases are highly fact-specific making it "hard to know" whether a case will support a lesser-included instruction. Appellate counsel also testified that the law is very different after State v. Jackson, 433 S.W.3d 390 (Mo. banc 2014).

Following the evidentiary hearing, the motion court denied Meiners's amended Rule 29.15 motion. The motion court concluded that Meiners's appellate counsel provided effective assistance of counsel. The motion court found that with regard to both manslaughter instructions, appellate counsel was not ineffective for failing to raise non-meritorious issues. The motion court found that the record demonstrated that there was no evidence of sudden passion to support a jury instruction for voluntary manslaughter: the purported provocation pertaining to Victim's relationship with Buhrman was too remote in time and the evidence

4

established that Meiners was the initial aggressor in the confrontation. With regard to the proposed involuntary-manslaughter instruction, the motion court rejected Meiners's contention that the evidence demonstrated recklessness in killing Victim. Instead, the motion court determined that Meiners "repeatedly kicked, punched, and strangled victim, bound him with duct tape and dragged him into a field where he was left to die." Thus, there was no evidence from which a jury reasonably could infer that Meiners recklessly killed Victim. The motion court further concluded that even if appellate counsel's conduct was deficient, Meiners failed to show any prejudice. This appeal follows.

## Point on Appeal

Meiners's sole point on appeal contends that appellate counsel was ineffective for failing to raise on direct appeal the issue of whether the trial court erred in refusing Meiners's proposed jury instructions on voluntary and involuntary manslaughter.

## Discussion

### I. Standard of Review

We review the denial of a post-conviction motion to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); McIntosh v. State, 413 S.W.3d 320, 323 (Mo. banc 2013). Findings of fact and conclusions of law are clearly erroneous if, after a review of the entire record, we are "left with a definite and firm impression that a mistake has been made." Mallow v. State, 439 S.W.3d 764, 768 (Mo. banc 2014). We defer to the motion court's determinations on the credibility of witnesses. Moore v. State, 407 S.W.3d 172, 175 (Mo. App. E.D. 2013).

### II. The Strickland Test

In order to warrant post-conviction relief under Rule 29.15, the movant must satisfy the two-pronged Strickland test by a preponderance of the evidence. Zink v. State, 278 S.W.3d 170,

5

175 (Mo. banc 2009) (referencing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Under the first prong of the Strickland test, the movant must demonstrate that his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation. Johnson v. State, 406 S.W.3d 892, 898–99 (Mo. banc 2013) (citing Strickland, 466 U.S. at 687). The movant must overcome a strong presumption that counsel's conduct was reasonable and effective. Mallow, 439 S.W.3d 769. To prove ineffective assistance of appellate counsel, the movant must establish that appellate counsel "failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." Williams v. State, 386 S.W.3d 750, 753 (Mo. banc 2012) (quoting Taylor v. State, 262 S.W.3d 231, 253 (Mo. banc 2008)). Appellate counsel will not be found ineffective for failing to raise non-meritorious claims. Glover v. State, 225 S.W.3d 425, 429 (Mo. banc 2007). Appellate counsel is permitted the discretion to use his or her professional judgment to focus on the most important issues and need not raise every non-frivolous claim on appeal. Morse v. State, 462 S.W.3d 907, 913 (Mo. App. E.D. 2015). The reasonableness of appellate counsel's strategic decision must be viewed as of the time the decision occurred, taking into consideration the circumstances of the case. Id. (citing Strickland, 466 U.S. at 689).

Under the second prong of the Strickland test, the movant must show that counsel's ineffective assistance caused prejudice. Johnson, 406 S.W.3d at 898–99 (citing Strickland, 466 U.S. at 687). Prejudice occurs when there is a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. Zink, 278 S.W.3d at 176. Thus, in demonstrating that the conduct of appellate counsel caused prejudice, the movant must demonstrate that "there is a reasonable probability the appeal's outcome would have been different." Williams, 386 S.W.3d at 753 (quoting Zink, 278 S.W.3d at 192).

6

## III. The Voluntary-Manslaughter Instruction

We first address Meiners's claim that appellate counsel was ineffective for failing to challenge the trial court's refusal to the proffered jury instruction on voluntary manslaughter. In his argument, Meiners focuses on evidence reflecting Meiners's knowledge about Victim's past sexual relationship with Buhrman, testimony that Victim brandished a knife during the altercation, and testimony that Meiners and Victim had a "disagreement" over Meiners's sister as sufficient evidence of sudden passion to warrant the requested jury instruction.

Appellate counsel testified at the evidentiary hearing that she did not believe the record sufficiently raised the issue of sudden passion required for a voluntary-manslaughter instruction. The motion court accepted this testimony, finding that the evidence did not raise the issue of sudden passion. A post-conviction movant fails to prove counsel's performance is deficient when the motion court accepts appellate counsel's testimony that she did not a raise a particular issue because she believed it would be without merit and was not a particularly strong issue to present on appeal. Sykes v. State, 372 S.W.3d 33, 41–42 (Mo. App. W.D. 2012).

Meiners's argument is further unavailing because the evidence offered by Meiners did not clearly entitle a defendant to a voluntary-manslaughter instruction. A person commits voluntary manslaughter if he or she "causes the death of another person under circumstances that would constitute murder in the second degree ... except that he[or she] caused the death under the influence of sudden passion arising from adequate cause." Section 565.023.1.[2] Sudden passion is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(7). Adequate cause is defined as "cause that

---

[2] All statutory citations are to RSMo Cum. Supp. (2013).

7

would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1).

Prior provocation cannot solely be the cause of a defendant's sudden passion. Roberts v. State, 471 S.W.3d 781, 785 (Mo. App. E.D. 2015). Additionally, "[w]ords alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation." State v. Deckard, 18 S.W.3d 495, 500 (Mo. App. S.D. 2000) (quoting State v. Redmond, 937 S.W.2d 205, 208 (Mo. banc 1996)). A defendant asserting sudden passion must not be the initial aggressor. State v. Everage, 124 S.W.3d 11, 16 (Mo. App. W.D. 2004) (citing State v. Jacoway, 11 S.W.3d 793, 798 (Mo. App. W.D. 1999)). In order to receive a jury instruction on voluntary manslaughter, the defendant bears the burden of injecting the issue of sudden passion. State v. Payne, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016).

The evidence emphasized by Meiners does not demonstrate the sudden passion required to reduce a charge of murder in the second degree to voluntary manslaughter. Meiners suggests that Victim talked to Buhrman shortly before arriving at his home. Because Victim talked to Buhrman, and given Victim's past sexual history and current interest in Buhrman, Meiners reasons that Victim's arrival at the party provoked him into a sudden rage. However, the record does not show that Victim talked to Buhrman shortly before the crime. The record contains no evidence that Buhrman talked to Victim in the days immediately preceding his death. Rather, the record reflects that Meiners knew about Victim's prior relationship with Buhrman for some time before he invited Victim to his home. After arriving at the home, Meiners, Victim, and Brickey socialized at two different locations and drove around town before Victim's death. The evidence did not indicate that Victim's prior relationship with Meiners's girlfriend sparked a sudden rage in Meiners. To the contrary, the evidence clearly shows that Meiners had time to

8

cool whatever anger he may have had upon learning of Victim's relationship with Buhrman. See Deckard, 18 S.W.3d at 501 (stating that the defendant, who knew about the victim's relationship with the defendant's significant other, had time for his passion to cool during his drive to the victim's place of employment and during his conversations with employees prior to the confrontation).

Meiners next maintains that Victim's brandishing of a knife injected the issue of sudden passion. However, the pertinent testimony, considered in the light most favorable to Meiners, shows that Victim brandished a knife only after being pulled from the car by Meiners. This testimony indisputably demonstrated that Meiners was the initial aggressor—not Victim, and that Victim only brandished a knife after Meiners initiated his attack on Victim by strangling and beating Victim while Victim was seated in the car. A person claiming sudden passion must not be the initial aggressor. Everage, 124 S.W.3d at 16. Victim's purported brandishing of a knife in response to being beaten and strangled by Meiners does not provide the requested provocation to support a claim of sudden passion.

Finally, Meiners points to Brickey's description that Meiners was filled with rage and testimony that Meiners argued with Victim about his sister as evidence of his sudden passion. We acknowledge that this testimony reasonably could establish that Meiners was enraged at the time he beat and strangled Victim. But the testimony lacks a crucial argument to warrant the lesser-included instruction of voluntary manslaughter, i.e., it does not suggest that Meiners's aggression was the product of adequate provocation by Victim. Further, Meiners's purported argument with Victim cannot constitute adequate provocation by Victim because words alone do not constitute sufficient provocation. Deckard, 18 S.W.3d at 500. The testimony describing the

9

disagreement between Meiners and Victim simply does not meet the prerequisites to support a finding that Meiners acted out of sudden passion when he mercilessly beat and killed Victim.

Appellate counsel reasonably could have concluded that the evidence presented by the record was insufficient to raise the issue of sudden passion. Because the motion court accepted appellate counsel's testimony that she did not believe the facts supported an instruction on voluntary manslaughter, and because the evidence did not clearly establish that Meiners was entitled to such an instruction, we are not left with a firm and definite impression that a mistake has been made. The first part of Meiners's point on appeal is denied.

## IV.   The Involuntary-Manslaughter Instruction

Meiners also argues that motion court clearly erred in finding appellate counsel effective because the evidence clearly supports he acted in a reckless manner when causing Victim's death, thereby warranting an instruction for involuntary manslaughter. Specifically, Meiners posits that his reckless conduct is evidenced by using duct tape found in Victim's vehicle and his bare hands to cause Victim's death as opposed to bringing any weapons with him when he left his home with Victim.[3]

A person commits first-degree involuntary manslaughter if he or she "recklessly causes the death of another person." Section 565.024.1(1). A person acts recklessly when he or she "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4. Involuntary

---

[3] Meiners also argues that the record establishes that he acted in imperfect self-defense. However, this claim was not included in Meiners's amended Rule 29.15 motion. "Claims not raised in a Rule 29.15 motion are waived on appeal ... [and p]leading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." Dorsey v. State, 448 S.W.3d 276, 284 (Mo. banc 2014) (quoting Johnson v. State, 333 S.W.3d 459, 471 (Mo. banc 2011) and citing McLaughlin v. State, 378 S.W.3d 328, 340 (Mo. banc 2012)). Therefore, Meiners did not properly place this contention before the motion court, and we cannot exercise plain-error review here. See id.

manslaughter is a "nested" lesser-included offense of second-degree murder. State v. Ramirez, 479 S.W.3d 640, 645 (Mo. App. W.D. 2015).

We must first address the Supreme Court's opinion in State v. Jackson, which is the core of Meiners's argument in support of error relating to the trial court's refusal to give an instruction on involuntary manslaughter. In Jackson, a majority of the Supreme Court held that the jury's right to disbelieve all or any part of the evidence and its right to refuse to draw needed inferences is a sufficient basis in the evidence—by itself—for a jury to conclude that the state has failed to prove the differential element and so rendering instructions on "nested" lesser-included offenses nearly automatic. 433 S.W.3d at 399. Accordingly, a defendant is entitled, upon timely and proper request, to instructions on "nested" lesser-included offenses and "does not have to introduce affirmative evidence or 'cast doubt' over the State's evidence in any way." State v. Randle, 465 S.W.3d 477, 479 (Mo. banc 2015). Applying the reasoning of Jackson, as we must, despite the overwhelming evidence presented by the State that Meiners knowingly killed Victim by strangling and beating him and leaving him to die in a field like an animal, the jury was not required to draw the inference that Meiners acted knowingly, and Meiners was permitted to argue that the evidence could have suggested that he acted in a reckless, not knowing manner. Thus, the State here concedes that refusing an involuntary-manslaughter instruction would not be justified under the current state of the law as pronounced in Jackson.

However, the State argues that appellate counsel was not ineffective because said counsel could not have known that the evidence was sufficient to support an involuntary manslaughter instruction *at the time appellate counsel prepared Meiners's direct appeal.* We must examine appellate counsel's conduct in light of the state of the law at the time of the appeal. Sykes, 372

11

S.W.3d at 42 (citing Johnson v. State, 330 S.W.3d 132, 141 (Mo. App. W.D. 2010)). This Court must not judge counsel's performance under the "distorting effects of hindsight." Id.

Meiners's appeal predated the Supreme Court decision in Jackson. Critically, prior to Jackson, we required an evidentiary basis from which a *reasonable juror* could conclude that a victim's death resulted from reckless action by a defendant before a trial court could instruct down from murder in the second degree to involuntary manslaughter. See State v. Lowe, 318 S.W.3d 812, 818 (Mo. App. W.D. 2010); State v. James, 267 S.W.3d 832, 839 (Mo. App. S.D. 2008). Indeed, we required a factual basis from which a reasonable inference of recklessness could be drawn in order to warrant the instruction on a lesser-included offense. Lowe, 318 S.W.3d at 818; James, 267 S.W.3d at 839. Without evidentiary support permitting a reasonable juror to draw an inference of reckless conduct rather than knowing conduct, a defendant was not entitled to the lesser-included instruction of involuntary manslaughter. See State v. Pulley, 356 S.W.3d 187, 193–94 (Mo. App. E.D. 2011). Cf. State v. Jefferson, 414 S.W.3d 82, 86–87 (Mo. App. E.D. 2013) (applying similar principles to lesser-included assault offenses). A lesser-included-offense instruction was not required then, "where there is strong and substantial proof of the offense charged, and the evidence does not suggest a questionable essential element of the more serious offense charged." State v. Taylor, 373 S.W.3d 513, 524 (Mo. App. E.D. 2012) (quoting State v. Greer, 348 S.W.3d 149, 154 (Mo. App. E.D. 2011)).

Although the Jackson majority suggests in its opinion that its holding was evident in prior Missouri Supreme Court cases including State v. Santillan, 948 S.W.2d 574 (Mo. banc 1997), State v. Pond, 131 S.W.3d 792 (Mo. banc 2004), and State v. Williams, 313 S.W.3d 656 (Mo. banc 2010), the opinions rendered by Missouri's intermediate appellate courts suggest otherwise. Opinions from our intermediate appellate court decisions before Jackson did not universally

12

require trial courts to give jury instructions on "nested" lesser-included offenses. See, e.g., Greer, 348 S.W.3d at 154; Lowe, 318 S.W.3d at 818. To the contrary, as discussed above, the state of the law as followed by the intermediate appellate courts included a required factual component that allowed a reasonable juror to draw an inference of reckless conduct rather than knowing conduct. Absent that factual requirement, a defendant was not entitled to the lesser-included instruction of involuntary manslaughter.

Given the numerous intermediate appellate opinions requiring a factual basis for recklessness at the time of Meiners's direct appeal, we cannot find appellate counsel unreasonable or in any way deficient in her duty to Meiners by concluding that challenging the trial court's refusal to give the involuntary-manslaughter instruction held no merit. Meiners argues that the use of his bare hands and that his use of duct tape, which he found in Victim's car, evidences that he only recklessly killed Victim and forms a factual basis to support the instruction on involuntary manslaughter. Meiners confuses the lack of premeditation required for first-degree murder with the knowing requirement of second-degree murder. That fact notwithstanding, the record describes a systematic and ruthless strangling and beating of Victim by Meiners that culminated with Meiners standing atop Victim as his fallen prey. Meiners then callously left Victim bound in a field to die while pronouncing that he no longer had any more problems. Such conduct belies Meiners's claim that he acted recklessly. See, e.g., State v. Myers, 291 S.W.3d 292, 298 (Mo. App. S.D. 2009) (concluding that the defendant who strangled the victim with his hands and a dog leash found nearby was not entitled to an instruction on involuntary manslaughter as his acts of not summoning medical help, moving the victim's body, attempting to establish an alibi, and later stating that the victim was not going to hurt him again demonstrated that he acted knowingly rather than recklessly).

13

Appellate counsel reasonably could view the systematic beating and strangling of Victim as transcending recklessness and conclude that such an argument would lack merit on appeal. The evidence before us shows that appellate counsel identified and examined the issue, and carefully reviewed the facts relating to the proffered instruction. Counsel's assessment of the lack of merit of such a claim was consistent with the decisions and pronouncements of the appellate courts prior to Jackson. A post-conviction movant fails to prove counsel's performance is deficient when the motion court accepts appellate counsel's testimony that she did not raise a particular issue because she believed it would be without merit and used her professional judgment in determining that it was not a strong issue to present on appeal. Sykes, 372 S.W.3d at 41–42.

We find no clear error in the motion court's determination that appellate counsel was effective in declining to raise the involuntary-manslaughter issue on appeal. Accordingly, we deny the second part of Meiners's sole point on appeal.

## Conclusion

The judgment of the motion court is affirmed.

KURT S. ODENWALD, Judge

James M. Dowd, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

14