**STATE of Missouri, Respondent,**

v.

**Charles L. MULDROW, Appellant.**

**No. WD 62389.**

Missouri Court of Appeals, Western District.

Aug. 17, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2004.

Application for Transfer Denied Oct. 26, 2004.

Vanessa Caleb, Assistant Appellate Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Eaton, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Before ULRICH, P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Chief Judge.

Charles L. Muldrow appeals the judgment of his convictions, after a jury trial in the Circuit Court of Jackson County, of murder in the first degree, § 565.020,[1] and armed criminal action (ACA), § 571.015. As a result of his convictions, he was sentenced to concurrent terms in the Missouri Department of Corrections of life imprisonment, with no chance of parole, for murder and life imprisonment for ACA.

In his sole point on appeal, the appellant claims that the trial court erred in overruling his motion to quash the entire jury panel because the members of the panel could not be fair and impartial in that they were irreparably tainted by a domestic violence display, consisting of six life-size cutouts of female domestic-violence victims with heart-shaped signs hung around their necks describing how each was killed, which was located in the courthouse lobby on the morning of the first day of trial.

We affirm.

## Facts

On April 27, 2001, an indictment was handed down by a Jackson County grand jury, charging the appellant with one count of murder in the first degree, § 565.020, and one count of ACA, § 571.015. The charges arose from events occurring on April 4, 2001, in which the appellant brutally murdered Jerrolyn Jones, his former girlfriend and domestic partner. An information was later filed in lieu of the indictment.

The appellant's case proceeded to a jury trial on October 21, 2002. Prior to that date, a domestic violence display had been erected in the lobby of the Jackson County Courthouse, commemorating National Domestic Violence Awareness Month. The display consisted of six life-size cutouts of female domestic-violence victims with heart-shaped signs hung around their necks describing how each was killed.

On the morning of the first day of trial, the trial court dealt exclusively with pretrial matters, during which time defense counsel did not object to the display. However, during the lunch hour, defense counsel was notified of the display's presence by another attorney, and, immediately moved to quash the entire jury panel. The trial court denied the motion, opting instead to have the display removed. However, the trial court did offer to question the panel during *voir dire* concerning the display and any possible prejudice it might have caused, if defense counsel preferred not to, but, defense counsel neither asked the court to question the panel about the domestic violence display nor raised the issue with the panel itself. Consequently, the jury was seated without ever having been questioned about the display.

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

On October 24, 2002, the jury found the appellant guilty of murder and ACA. On November 15, 2002, he filed a motion for judgment of acquittal, or, in the alternative, for a new trial. In his motion, he alleged, *inter alia,* that the trial court erred in overruling his motion to quash the entire jury panel because the panel members, and, therefore, the jury members, were "unfairly tainted by very emotional images and stories of domestic violence murders." On December 20, 2002, the motion was denied. On that same date, the trial court sentenced the appellant to concurrent terms of life imprisonment, with no chance of parole, for murder and life imprisonment for ACA.

This appeal followed.

## I.

■ In his sole point on appeal, the appellant claims that the trial court erred in overruling his motion to quash the entire jury panel because the members of the panel could not be fair and impartial in that they were irreparably tainted by a domestic violence display, consisting of six life-size cutouts of female domestic-violence victims with heart-shaped signs hung around their necks describing how each was killed, which was located in the courthouse lobby on the morning of the first day of trial. Specifically, he claims that the domestic violence display "created an atomosphere [*sic*] in the courthouse— where [he] was on trial for killing a former girlfriend—which was inherently lacking in due process and which was inherently prejudicial[.]" We disagree.

■ The trial court is afforded wide discretion in ruling on a motion to quash the entire jury panel. *State v. Everage,* 124 S.W.3d 11, 13 (Mo.App.2004). However, that discretion is not unfettered. In making its determination, the court must consider the defendant's right to a trial before a fair and impartial jury. *See id.* (stating that, when ruling on a motion to quash the entire venire, a court must consider whether the entire jury panel has been tainted so as to deprive the defendant of a fair trial). Thus, if the jury panel has been prejudiced against a criminal defendant such that a fair and impartial jury cannot be impaneled, the court must quash the entire panel and begin anew. The defendant bears the burden of demonstrating that the trial court erred in denying his motion to quash the jury panel. *State v. Sprinkle,* 122 S.W.3d 652, 669 (Mo.App. 2003). Hence, in order for the appellant to demonstrate reversible error, here, he must show that the panel was prejudiced against him as a result of their viewing the domestic violence display in question such that a fair and impartial jury could not be impaneled to hear his case.

The record reveals that on the morning of the first day of trial, October 21, 2002, there was a domestic-violence display located in the courthouse lobby, consisting of six life-size cutouts of female domestic-violence victims with heart-shaped signs hung around their necks describing how each was killed. The record also reveals that defense counsel was notified of the display during the lunch hour, before *voir dire* had begun. Immediately thereafter, defense counsel moved to quash the entire panel, arguing that: "I think this would just fall under a general right of due process, fair trial, and jurors that aren't tainted by—unfairly tainted by issues before they come into the courtroom." The trial court denied the motion, opting instead to have the display removed. In doing so, the court explained:

I think whatever prejudice may exist— and my feeling is that without hearing from the jurors, we're not going to know the—it strikes me as the kind of things, the exhibit, the way it's displayed, it's the kind of thing people just walk by.

You can't read the stories that are referenced unless you get right up close and look at them and read, and it could be that some people are doing that, but I think that can be flushed out and handled appropriately during jury selection.

.... And I will offer, if the defendant would like for me to do so, I will address it with the jury panel, if you like, so you don't have to step into it. I mean, I'll leave that up to you.

Despite this offer by the trial court, defense counsel neither asked the court to question the panel about the domestic violence display nor raised the issue with the panel itself. Consequently, the appellant concedes that there is nothing in the record indicating that any members of the panel even saw the display, let alone that the entire panel was tainted by viewing it.[2] Nonetheless, he claims that "these circumstances are so outrageous that prejudice is inherent," relying on *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), and *State v. Baumruk,* 85 S.W.3d 644 (Mo. *banc* 2002).

In *Turner,* the appellant was convicted in Louisiana of murder. 379 U.S. at 466, 85 S.Ct. 546. At trial, two key witnesses for the State also served as bailiffs, specifically assigned to the jury. *Id.* at 467, 85 S.Ct. 546. On appeal, the issue was whether this violated the appellant's due process rights under the Fourteenth Amendment; specifically, whether prejudice could be demonstrated considering the fact that nothing in the record indicated that the bailiffs ever spoke with the jury in regard to the case. *Id.* at 471–73, 85 S.Ct. 546. The United States Supreme Court held that the bailiffs involvement in the case was prejudicial to the appellant, explaining that "even if it could be assumed that [they] never did discuss the case directly with any members of the

jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution." *Id.* at 473, 85 S.Ct. 546.

In *Baumruk,* the appellant went on a "shooting spree" inside the St. Louis County Courthouse, wounding two attorneys, a bailiff, and a security guard, and killing his wife. 85 S.W.3d at 646–47. The appellant was subsequently tried and convicted, of first degree murder, in the same courthouse. *Id.* at 647. On appeal, the issue was whether the environment surrounding the trial, notwithstanding the fact that the record contained no outward indication of actual prejudice, was nonetheless inherently prejudicial to the appellant. *Id.* at 646. Our Supreme Court held that it was, explaining that "[t]he environment of a trial must give jurors, who may have otherwise been carefully selected, a sense or appearance of neutrality." *Id.* at 649. The court further explained that:

> This is not just a pre-trial publicity, improper venue case. At its core this case raises a serious question as to the "impartiality of the adjudicator" because of the environment in which the trial was held. The jurors were aware that the courtroom in which they sat was the same as the crime scene and that the building in which they entered every day of trial was the scene of the terrifying events.
>
> . . .
>
> The jurors, in effect, sat at the murder scene while determining guilt or innocence and the penalty to be imposed.

*Id.* at 650 (citations omitted).

This case is clearly distinguishable from *Turner* and *Baumruk.* In those cases, the environment surrounding the trial clearly

---

2. The record does not indicate at what time the panel members arrived at the courthouse. Therefore, the duration of the panel's exposure to the display, if any, is unknown.

did not convey "a sense or appearance of neutrality," but instead conveyed either a positive connection between the court and the State, as in *Turner*, or a negative connection between the court and the defendant, as in *Baumruk*. Here, while the anti-domestic violence display certainly conveyed disdain for domestic violence, it did not convey that the court was connected to either the State or the appellant in any fashion. In other words, the environment surrounding the trial still conveyed "a sense or appearance of neutrality." Therefore, while we recognize that courthouse lobbies could be considered inappropriate settings for the type of display involved here while a criminal trial is in progress in which the defendant is charged with domestic violence, even if we assume, *arguendo*, that members of the panel actually saw the display, we cannot say that this alone created an inherently prejudicial environment sufficient to deprive the appellant of a fair trial and require a new trial. *See Bryant v. State*, 201 Ga.App. 305, 410 S.E.2d 778, 780 (1991) (holding that an anti-drunk driving display, erected in the courthouse and exposed to the jury, did not deprive a defendant charged with DWI of a fair trial). Hence, inasmuch as the record reveals no sign of actual prejudice, the appellant has failed to demonstrate that the trial court erred in denying his motion to quash the entire jury panel.

Point denied.

## Conclusion

The judgment of the appellant's jury convictions for murder in the first-degree, § 565.020, and ACA, § 571.015, is affirmed.

ULRICH, P.J., and LOWENSTEIN, J., concur.