[No. 27691-1-III.   Division Three.   March 18, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. SEAN JOSEPH O'CONNOR, *Appellant*.

*Sean J. O'Connor*, pro se.

*Douglas D. Phelps* (of *Phelps & Associates PS*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 BROWN, J. — Sean J. O'Connor appeals his convictions for one count of manufacturing marijuana and one count of delivering marijuana. He contends (1) a courthouse display deprived him of a fair trial, (2) insufficient evidence supports his delivery conviction, and (3) he was denied a public trial because of courthouse security screening. Pro se, Mr. O'Connor alleges officer perjury and prosecutorial misconduct. We reject these contentions and allegations, and affirm.

## FACTS

¶2 Officers obtained a search warrant for Mr. O'Connor's home partly based on an informant's tip. There, officers found 131 marijuana plants in various stages of production, six and one-half pounds of drying harvested marijuana, and

a triple beam scale. One of the officers characterized the operation as sophisticated and "a nice grow." Report of Proceedings (RP) at 279. An officer testified that the purpose of the scale was, in his experience, to weigh controlled substances and not typically for personal use. The informant testified that Mr. O'Connor threatened him and requested $50,000 from him for "lost weed" and attorney fees. RP at 523.

¶3 The State charged Mr. O'Connor with manufacturing a controlled substance, marijuana; possession of a controlled substance with intent to deliver; and two counts of harassment related to his threats to the informant. Before trial, Mr. O'Connor moved in limine to open the court, arguing the routine entry-searches were unlawful, restricting Mr. O'Connor's right to a public trial. The court first reasoned Mr. O'Connor's public trial arguments were misplaced because the courthouse entry searches were for protection from weapons and that all courtrooms were open. Defense counsel specified he wanted the trial moved to the Gonzaga University courtroom or that the courthouse searches be ceased. The court denied Mr. O'Connor's motion.

¶4 On the fourth trial day, the Spokane County prosecutor's office Victims and Witnesses Unit arranged displays outside the courthouse entrances for the National Day of Remembrance for Murder Victims. Multiple pairs of shoes were displayed with signs reading, "[T]hese pairs of shoes represent the 564 men, women, adolescents and children in the Spokane community who have lost their lives to a violent crime since 1951." RP at 412. Mr. O'Connor requested a mistrial. The court questioned the jury to determine the effect of the display. It dismissed one juror who told the court that seeing the empty children's shoes affected her. Concluding Mr. O'Connor could still receive a fair trial and no State misconduct occurred, the court denied his mistrial motion.

¶5 The jury found Mr. O'Connor guilty solely of the two drug charges. He appealed.

## ANALYSIS

### A. Display Mistrial Motion

¶6 The issue is whether the trial court erred by abusing its discretion in denying Mr. O'Connor's mistrial motion. He contends he was denied a fair trial by the courthouse display and argues the display was the result of prosecutorial misconduct.

¶7 The decision to grant or deny a mistrial is within the sound discretion of the trial court and is reversible solely for an abuse of discretion. *State v. Allen*, 159 Wn.2d 1, 10, 147 P.3d 581 (2006). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Id.* When making this determination, appellate courts do not weigh conflicting evidence or decide credibility. *See State v. Rodriguez*, 103 Wn. App. 693, 696, 699-700, 14 P.3d 157 (2000) (trial judge is in the best position to determine the effects of trial irregularities on the jury), *aff'd*, 146 Wn.2d 260 (2002). Our inquiry is limited to whether the trial court had tenable reasons for concluding Mr. O'Connor was not prejudiced by the improper testimony.

¶8 A trial court should grant a mistrial when a trial irregularity is so prejudicial that it deprives the defendant of a fair trial. *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994). A trial irregularity is not prejudicial unless with reasonable probability the trial's outcome would have differed if the error had not occurred. *State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). Similarly, to establish prosecutorial misconduct, the defendant bears the burden to establish the conduct complained of was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Since Washington courts have not yet analyzed the potential prejudice that may be associated with courthouse displays, cases outside our state are instructive.

¶9 In *State v. Muldrow*, 145 S.W.3d 471, 472 (Mo. Ct. App. 2004) a domestic violence display was erected in the

lobby of the Jackson County courthouse, commemorating National Domestic Violence Awareness Month. The display consisted of six life-size cutouts of female domestic violence victims with heart-shaped signs hung around their necks describing how each was killed. *Id.* Mr. Muldrow, who was on trial for murder, requested the entire jury panel be quashed due to the display. The trial court denied his request. The jury later found Mr. Muldrow guilty. On appeal, the Missouri court of appeals held, "[W]hile we recognize that courthouse lobbies could be considered inappropriate settings for the type of display involved here . . . even if we assume, *arguendo*, that members of the panel actually saw the display, we cannot say that this alone created an inherently prejudicial environment sufficient to deprive the appellant of a fair trial and require a new trial." *Id.* at 475. Similarly, in *Bryant v. State*, 201 Ga. App. 305, 410 S.E.2d 778, 780 (1991), the Georgia court of appeals held that an anti-drunk-driving display, erected in the courthouse and exposed to the jury, did not deprive a defendant charged with driving while intoxicated of a fair trial.

■■ ¶10 Here, the judge questioned the jury to determine the effect of the display. Most jurors did not pay attention to it. One juror informed the court that seeing the empty children's shoes affected her. The judge dismissed this juror. Notably, Mr. O'Connor was not convicted of violent offenses and was acquitted of the harassment charges.

¶11 Relying on *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954), Mr. O'Connor contends even indirect contact with a juror during trial is presumptively prejudicial. There, the Supreme Court held, "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial." *Id.* at 229. Here, no contact occurred directly or indirectly "about the matter pending." *Id.* The display did not bear on Mr. O'Connor's trial. He was convicted of drug crimes, not the violent

offenses targeted in the displays. Hence, Mr. O'Connor does not establish prejudice showing prosecutorial misconduct. Further, the trial court gave tenable grounds when denying his mistrial motion.

## B. Evidence Sufficiency

¶12 The next issue is whether sufficient evidence supports Mr. O'Connor's conviction for possession of marijuana with intent to deliver. He contends no evidence shows he intended to deliver the marijuana.

¶13 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it would permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). An insufficiency claim admits the truth of the State's evidence and requires that all reasonable inferences be drawn in the State's favor and interpreted most strongly against the defendant. *Id.* Circumstantial evidence is equally as reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

¶14 The elements of possession of a controlled substance with intent to deliver under RCW 69.50.401(1) are (1) unlawful possession (2) with intent to deliver (3) a controlled substance. Intent to deliver may be inferred where the evidence shows both possession and facts suggestive of a sale. *State v. Hagler*, 74 Wn. App. 232, 236, 872 P.2d 85 (1994). Mere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver. *State v. Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995). At least one additional fact must exist, such as a large amount of cash or sale paraphernalia, suggesting an intent to deliver. *Hagler*, 74 Wn. App. at 236 (large amount of cocaine and $342 sufficient to establish intent to deliver); *State v. Lane*, 56 Wn. App. 286, 297-98, 786 P.2d 277 (1989) (one ounce of cocaine, large amount of cash, and scales).

Here, the large amount of marijuana, the sophistication of the grow operation, and the scale sufficiently support an intent-to-deliver inference to convict Mr. O'Connor.

## C. Public Trial

¶15 The next issue is whether Mr. O'Connor was denied his public right because the public is subject to screening and search before entering the courthouse.

¶16 This issue was raised as a pretrial motion in limine. "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Regardless of the oddly used procedure, the court denied the motion. We review the denial of a limine motion for abuse of discretion. *State v. Finch*, 137 Wn.2d 792, 810, 975 P.2d 967 (1999).

¶17 Mr. O'Connor assigned error to a denial of his right to have an open and public trial, a constitutional problem outside his evidentiary motion. However, our Supreme Court has repeatedly noted such searches are permissible. *See York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 324, 178 P.3d 995 (2008) (quoting *Downing v. Kunzig*, 454 F.2d 1230, 1233 (6th Cir. 1972) for the proposition that suspicionless searches upon entrance to courthouse are allowable and that requiring individualized suspicion " 'would as a practical matter seriously impair the power of government to protect itself against ruthless forces bent upon its destruction' "); *Jacobsen v. City of Seattle*, 98 Wn.2d 668, 673-74, 658 P.2d 653 (1983) (quoting *Wheaton v. Hagan*, 435 F. Supp. 1134, 1145 (M.D.N.C. 1977) for proposition that " 'efforts to bomb courthouses threaten[s] to undermine the rule of law[;] the dangers posed by [unruly actions at a concert] are substantially less than those which justified suspending the warrant requirement in courthouse . . . searches' ").

¶18 The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." Similarly, article I, section 22 of the Washington Constitution guarantees, "In criminal prosecutions the accused shall have the right . . . to have a . . . public trial." The Washington Constitution also provides in article I, section 10 that "[j]ustice in all cases shall be administered openly." The public trial right is not absolute; "it is strictly guarded to assure that proceedings occur outside the public courtroom in only the most unusual circumstances." *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009) (citing *State v. Easterling*, 157 Wn.2d 167, 174-75, 137 P.3d 825 (2006)). "Whether a defendant's constitutional right to a public trial has been violated is a question of law, subject to a de novo review on direct appeal." *Id.* at 225.

¶19 Our Supreme Court has articulated guidelines every trial court must follow before closing a courtroom to the public. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). Those criteria are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Id.* (alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

But, before a court addresses the *Bone-Club* factors, a closure must be contemplated or requested.

¶20 Mr. O'Connor fails to persuade us that a closure was contemplated or requested, or that any non-routine general courthouse security screening occurred. A careful record review fails to show any closed proceedings or the exclusion of any person from Mr. O'Connor's trial at any time. While Mr. O'Connor broadly argues his constitutional rights were violated because people might not have wished to be screened before entering the courthouse and were, therefore, possibly precluded from attending his trial, his argument is sketchy, confusing, and unpersuasive. *See State v. Davis*, 53 Wn. App. 502, 506, 768 P.2d 499 (1989) ("sketchy and confused" constitutional arguments will not be reached by the court). Thus, we conclude Mr. O'Connor's state and federal rights to a public trial were not breached. Accordingly, we conclude the court did not err in denying Mr. O'Connor's motion in limine to move the trial or cease security screening.

### D. Pro Se Additional Grounds

¶21 In his pro se statement of additional grounds for review, Mr. O'Connor alleges perjury by three of the State's witnesses, apparently concerning his arrest date. He further alleges his civil rights were violated because the State originally charged him with four harassment counts. However, "[an] appellate court will not consider a defendant/appellant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Further, "[an] appellate court is not obligated to search the record in support of claims made in a defendant/appellant's statement of additional grounds for review." *Id.*

¶22 Mr. O'Connor does not explain the underlying facts for his perjury and vindictive prosecution claims to enable us to review his claims. Our record review reveals March 1 is repeatedly, and correctly, referenced as the arrest date. The dismissed harassment charges were apparently based

upon alleged threats by Mr. O'Connor against the informant and the informant's family.

¶23  Affirmed.

KULIK, C.J., and SWEENEY, J., concur.

Review denied at 169 Wn.2d 1018 (2010).