IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38335-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RANDY JOSEPH GROUT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Randy Joseph Grout appeals his conviction for possession with intent to distribute methamphetamine. We affirm the conviction, but remand for removal of community custody supervision fees from the judgment and sentence.

FACTS

On November 21, 2020, officers from the Colville Police Department and Stevens County Sheriff's Office executed a warrant on Randy Grout's home. The subject of the search warrant was a juvenile living with Mr. Grout, not Mr. Grout himself. Upon entering the home, one officer found Mr. Grout laying in his bed and other individuals near Mr. Grout's bedroom. The lead detective, Mark Coon, located the subject of the

search warrant inside the home. All the individuals found in the home were detained, and Detective Coon read them the search warrant and their *Miranda*[1] rights.

Officers then began a search of the home, with Detective Coon conducting a search of bedroom where Mr. Grout had been found. Within the headboard[2] of Mr. Grout's bed, Detective Coon found several small baggies, a plastic bag containing what was later confirmed to be 6.3 grams of methamphetamine, and a pipe. Some of the small baggies contained crystalline residue. Detective Coon also found a scale on Mr. Grout's bed.

Originally, the State charged Mr. Grout with possession of methamphetamine, but on March 1, 2021, the State amended the charge to possession with the intent to deliver.[3]

At trial, the jury heard testimony from Detective Coon, who had almost 18 years of experience in law enforcement with specific training in narcotics. Detective Coon testified to the significance of the evidence found in Mr. Grout's room. In Detective Coon's experience, possession of a scale is suggestive of drug distribution, as drugs

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] There were multiple levels of shelves located in the headboard. *See* Ex. 1-2.

[3] The amended information is dated March 1 but it was not filed until March 15. On February 25, four days before the charges were amended by the State, our Supreme Court struck down as unconstitutional Washington's law outlawing simple possession of controlled substances. *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

are weighed out prior to sale. Nevertheless, Detective Coon conceded it is possible for a drug user to have a scale to measure their own amounts of drugs. Detective Coon also described the small baggies found in Mr. Grout's room as "dope style" baggies, which are normally one-inch by one-inch bags used to hold small amounts of drugs. 1 Report of Proceedings (RP) (May 13, 2021) at 115. He also testified that, based on his training and experience, drug users possess anywhere from one-half gram to five grams of methamphetamine for personal use.

Detective Coon also testified to other possible indications of drug distribution that were not found in the search of Mr. Grout's home. Such evidence might consist of multiple stashes of drugs, drug ledgers, and large quantities of cash. Detective Coon testified that such evidence is not always present in a drug sale case. Detective Coon also testified that there is some overlap between evidence collected from those who sell drugs and those who use drugs.

The jury also heard testimony from Jennifer Allen, a forensic scientist from the Washington State Patrol Crime Laboratory. She confirmed that the white substance from the plastic bag found in Mr. Grout's bedroom was 6.3 grams of methamphetamine. The pipe found in in the bedroom also tested positive for methamphetamine.

Last, the jury heard testimony from Mr. Grout regarding his usage of methamphetamine, in which he confirmed he uses methamphetamine for personal use.

After deliberation, the jury returned a verdict of guilty of possession of methamphetamine with intent to deliver. The court sentenced Mr. Grout to 12 months plus 1 day of incarceration and 12 months' community custody, and assessed mandatory legal financial obligations and supervision fees on the community custody term. Mr. Grout filed a timely appeal.

## ANALYSIS

*Sufficiency of the evidence*

The primary issue on appeal is whether the State produced sufficient evidence to justify the jury's guilty verdict. When reviewing a sufficiency challenge, we construe the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found each and every element of the crime charged beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). The sufficiency standard is a deferential one, but it is not a rubber stamp. "'[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation.'" *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016) (alteration in original) (quoting *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)). "A 'modicum' of evidence does not meet this

4

standard." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

"The elements of possession of a controlled substance with intent to deliver under RCW 69.50.401(1) are (1) unlawful possession (2) with intent to deliver (3) a controlled substance." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). Each of these elements are separate and require specific proof. For example, proof of the element of possession is not by itself sufficient to also prove the element of intent to deliver. *See Vasquez*, 178 Wn.2d at 7. This is true even when the amount of drugs possessed exceed what would be expected of simple possession. *O'Connor*, 155 Wn. App. at 290. To prove intent to deliver, "[a]t least one additional fact must exist," beyond mere possession "such as a large amount of cash or sale paraphernalia, suggesting an intent to deliver." *Id*.

Here, the State claims to have met its burden by introducing evidence of the scale and the empty dope-style baggies. According to the State, this evidence, coupled with possession of 6.3 grams of methamphetamine, amounted to "overwhelming" evidence that Mr. Grout possessed the methamphetamine with intent to deliver it to others. Resp't's Br. at 8.

We disagree with the State's claim that the evidence of intent was overwhelming. But that is not the test. Instead, we must determine whether the State has produced

sufficient evidence, beyond mere possession of methamphetamine, to justify an inference of intent to deliver.

The strongest case supporting the State's position is the recent decision by Division Two of this court in *State v. Sprague*, 16 Wn. App. 2d 213, 480 P.3d 471 (2021). In *Sprague*, a law enforcement search uncovered "9 to 10 grams of methamphetamine, . . . a homemade pipe, a metal container with methamphetamine residue, a scale, and a bundle of plastic grocery bags." *Id*. at 230. This evidence was "consistent with a hypothesis of innocence." *Id*. at 231. But it also constituted evidence, separate from mere possession of drugs, that suggested an intent to deliver. *Id.* at 235. Thus, this court upheld Mr. Sprague's conviction over his sufficiency challenge.

Mr. Grout claims his case is distinguishable from *Sprague*. Specifically, he points to the fact that at least some of the baggies found in his bedroom contained only residue, thus indicating past personal use instead of future use for packaging and delivery. In contrast, the plastic grocery bags in *Sprague* do not appear to have been used for delivery of methamphetamine.

Mr. Grout's arguments amount to a compelling jury argument, but they are not a reason to depart from *Sprague*. The jury here certainly could have found reason to doubt that Mr. Grout possessed methamphetamine with intent to deliver. But there were facts

6

beyond mere possession, namely possession of the baggies and a scale, that allowed for a contrary assessment of the facts.

This case is not materially distinguishable from *Sprague*. We therefore affirm the conviction.

*Supervision fees*

Supervision fees are governed by RCW 9.94A.703(2)(d). This statute provides that "[u]nless waived by the court, as part of a term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." Given supervision fees are waivable, they are discretionary. However, they are not a "'cost'" under RCW 10.01.160(3) that "'shall not'" be imposed against an indigent defendant. *See State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020).

The parties agree the trial court at sentencing intended to waive all discretionary legal financial obligations. Our review of the report of proceedings does not suggest otherwise. Yet the fact remains that the court did not strike the boilerplate language, buried in the judgment and sentence form, imposing discretionary supervision fees. *See* Clerk's Papers at 36 (Felony Judgment and Sentence at 8, § 4.2(B)(7)). Given the parties' agreement regarding the trial court's intent, and our review of the record, we

deem this oversight to be clerical in nature. The supervision fees should be struck on

remand.

## CONCLUSION

Mr. Grout's conviction is affirmed. We remand with instructions to strike the

community custody supervision fees from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Pennell, J.

WE CONCUR:

Siddoway, C.J.

Staab, J.