# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57656-2-II |
| Respondent, | |
| v. | |
| GUILLERMO OTHON III, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.— Guillermo Othon III was driving a car with his wife as a passenger when law enforcement pulled them over. A purse in the front passenger area contained large amounts of methamphetamine and heroin, scales, packaging materials, and cash. The State charged Othon with two counts of unlawful possession of a controlled substance with intent to deliver, and a jury convicted him of both counts. At sentencing, the trial court imposed a crime victim penalty assessment.

Othon appeals, arguing that the evidence was insufficient to support his convictions. He also argues, and the State concedes, that we should remand to strike the crime victim penalty assessment.

We affirm Othon's convictions. We accept the State's concession regarding the crime victim penalty assessment and remand solely to strike that assessment from the judgment and sentence.

FACTS

While surveilling Othon's wife, police watched Othon place a backpack in a minivan registered to his father-in-law. His wife then put a purple purse in the front passenger seat area. She sat in the front passenger seat while Othon drove. Police followed the van and eventually conducted a traffic stop.

At the traffic stop, officers saw the purse on the floorboard of the front passenger seat through the vehicle's window. Because the purse zipper was open, the officers were able to "clearly see" from outside the vehicle a plastic bag with what they suspected was methamphetamine inside. Verbatim Rep. of Proc. (VRP) at 283. They also noticed a glass smoking pipe protruding from the purse.

The officers obtained a warrant to search the car and the purse. Inside the purse, law enforcement discovered roughly 200 grams of methamphetamine in multiple bags, 350 grams of heroin, three electronic scales, a bag of smaller plastic baggies, and $195 in cash. They also found two cell phones mounted on the driver's side of the vehicle, and Othon's wife was carrying a third phone.

The State charged Othon and his wife with one count of possession of heroin with intent to deliver and one count of possession of methamphetamine with intent to deliver. The State alleged that Othon acted either as a principal or an accomplice.

Othon's wife pleaded guilty, and Othon went to trial. At Othon's trial, one detective testified that methamphetamine and heroin were typically sold by the gram to individual users. The approximately 200 grams of methamphetamine and 350 grams of heroin found in the vehicle

were worth about $15,000. The detective also stated that the bag of small plastic baggies found in Othon's vehicle was "fairly consistent with somebody who deals in narcotics." VRP at 248.

Other detectives testified about how drug transactions usually worked. They stated that drug transactions often occurred in a vehicle in a public parking lot. Individuals involved in narcotics trafficking often used vehicles belonging to others to conduct transactions, including vehicles registered to other family members. They also often had someone else drive them. It was also common for individuals involved in the drug trade to have multiple cell phones.

The jury instructions explained that a person is an accomplice if they encourage, request, aide, or agree to aid someone else in committing the relevant offense.

The jury found Othon guilty of both charges. The trial court imposed a sentence of 15 months of confinement, near the middle of the standard sentencing range, and a $500 crime victim penalty assessment.

Othon appeals his convictions and the crime victim penalty assessment.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Othon argues that the evidence was insufficient to support his possession with intent to deliver convictions. He contends the State failed to establish that he intended to deliver the controlled substances or that he acted as an accomplice to his wife's crimes. We disagree.

A.    Standard of Review

We review challenges to the sufficiency of the evidence by considering whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365

P.3d 746 (2016). A challenge to the sufficiency of the evidence admits the truth of the State's

evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119

Wn.2d 192, 201, 829 P.2d 1068 (1992). Direct and circumstantial evidence are equally reliable.

*State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). We defer to the trier of fact on issues of

conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-*

*Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

B.      Possession of a Controlled Substance with Intent to Deliver

To establish possession of a controlled substance with intent to deliver, the State must

prove that the defendant possessed a controlled substance and they had the intent to deliver the

substance to another. Former RCW 69.50.401(1) (2019). While Othon acknowledges that "the

evidence might support a finding that Othon constructively possessed the narcotics in [his wife's]

purse," he asserts that "mere possession does not support an inference of intent to deliver." Br. of

Appellant at 10. Specifically, Othon contends there is no evidence that he had knowledge of the

quantity of drugs and the existence of the scales and packaging materials in the purse.

1.      Constructive possession of items in the vehicle

A defendant has constructive possession if they have "dominion and control over the item."

*State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). "Dominion and control means that the

object may be reduced to actual possession immediately." *Id*. We may consider whether the

defendant had control over the broader premises in which the item was located, and this control

does not have to be exclusive. *State v. Listoe*, 15 Wn. App. 2d 308, 327, 475 P.3d 534 (2020). For

example, the fact that a defendant was driving a car with narcotics in the back seat supported a

finding that the defendant had dominion and control over the vehicle and its contents. *Id*. at 328.

Here, a rational jury could infer that Othon had dominion and control over the vehicle, the broader premises where the purse was located. Othon was driving the car and was close to the open purse. Considering the evidence in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Othon had constructive possession over the items found in the purse.

2.      Intent to deliver

When the charge is possession with intent to deliver, evidence of intent is typically circumstantial. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). Circumstantial evidence is as reliable as direct evidence. *Kintz*, 169 Wn.2d at 551. However, "[e]vidence that a defendant had the intent to deliver must be 'sufficiently compelling' that the intent 'is plainly indicated as a matter of logical probability.'" *State v. Sprague*, 16 Wn. App. 2d 213, 233, 480 P.3d 471 (2021) (internal quotation marks omitted) (quoting *Davis*, 79 Wn. App. at 594).

Generally, mere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver. *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). But "a finder of fact can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor." *State v. Hotchkiss*, 1 Wn. App. 2d 275, 280, 404 P.3d 629 (2017). The presence of sale paraphernalia, such as scales, cell phones, cash, and packing materials, can be the additional factor that support an intent to deliver. *State v. Slighte*, 157 Wn. App. 618, 627 n.13, 238 P.3d 83 (2010), *rev'd on other grounds,* 172 Wn.2d 1003, 257 P.3d 1112 (2011). A defendant may possess a cell phone and a scale for personal use; however, a cell phone and a scale are "usually considered

in conjunction with other circumstantial evidence that is similarly suggestive of such intent." *See Sprague*, 16 Wn. App. 2d at 234.

Here, Othon constructively possessed about 200 grams of methamphetamine in multiple bags and 350 grams of heroin, quantities well beyond that normally kept for personal use, three electronic scales, multiple small plastic baggies, and three cell phones for two adults in the car. A detective testified that users tend to buy individual grams, and the presence of the baggies was "fairly consistent with somebody who deals in narcotics." VRP at 248. Detectives also testified that people involved in drug trade often have multiple cell phones. Thus, the State presented evidence that Othon possessed a large quantity of controlled substances, plus several additional factors suggestive of intent. *Hotchkiss*, 1 Wn. App. 2d at 280.

Even though the possession of a scale and a cell phone could be consistent with both an intent to deliver and personal use, the evidence must be viewed in a light most favorable to the State. Here, a rational trier of fact could find beyond a reasonable doubt that Othon's possession of three scales, more than one cell phone per adult in the car, and packaging materials, together with his possession of a significant amount of methamphetamine and heroin showed intent to deliver.

3.     Accomplice liability

Othon also challenges the State's accomplice liability theory, arguing that there was no evidence that he associated himself in any way with his wife's crimes or that he knew of her intent. He further argues that the State improperly relied on the fact that Othon was married to establish Othon's knowledge of the quantity of narcotics and the existence of the paraphernalia in his wife's possession. We disagree.

A person is guilty as an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, they solicit, encourage, aid, or agree to aid another person in planning or committing the crime. RCW 9A.08.020(3)(a)(i)-(ii). The State must prove that the defendant actually knew that they were promoting or facilitating the principal in the commission of the crime. *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d 268 (2015). But the State can prove actual knowledge through circumstantial evidence. *Id.* A person has actual knowledge when they have "'information which would lead a reasonable person in the same situation to believe'" that they are promoting or facilitating the crime. *Id.* (quoting RCW 9A.08.010(1)(b)(ii)).

Viewing the evidence in the light most favorable to the State, Othon's constructive possession of the cell phones and the marketable quantity of controlled substances, three scales, and small plastic baggies was sufficient to raise a reasonable inference that he knew about his wife's intent to deliver. While their marital relationship could have bolstered such inference, it was not the only evidence that the State relied on to establish Othon's knowledge that he was promoting or facilitating the crime of possession of a controlled substance with intent to deliver.

Further, the detectives testified that it was typical for drug dealers to have someone else drive them. Based on this testimony, a rational jury could infer that Othon knowingly facilitated his wife's commission of the crimes by driving her to a delivery.

Othon analogizes his possession of a controlled substance with intent to deliver convictions to one reversed by Division One in *State v. Amezola*, 49 Wn. App. 78, 741 P.2d 1024 (1987), *overruled on other grounds by State v. MacDonald*, 138 Wn.2d 680, 689, 981 P.2d 443 (1999). In *Amezola*, a defendant appealed her conviction for possession of heroin with intent to deliver. *Id.* at 79. The defendant lived with her alleged accomplices but was not involved in the drug dealing—

she cooked meals for them and cleaned their shared residence. *Id.* at 83, 89. The State argued that the defendant's cooking and cleaning enabled her housemates to engage in the delivery of heroin, making her an accomplice in their criminal enterprise. *Id.* at 89. Division One rejected the argument, holding that the defendant's housework was legally insufficient to show that she had associated herself with her housemates' illegal activities, thereby making her their accomplice. *Id.* at 89-90.

Othon's analogy to *Amezola* fails. Unlike that case, a rational jury could infer that Othon was facilitating his wife's drug dealing by driving her to deliver her narcotics, participation that was sufficient to make him an accomplice. Thus, viewing the evidence in the light most favorable to the State, a jury could find Othon guilty as an accomplice beyond a reasonable doubt.

## II. CRIME VICTIM PENALTY ASSESSMENT

Othon requests, and the State concedes, that the crime victim penalty assessment be stricken due to Othon's indigency. Trial courts may no longer impose the crime victim penalty assessment on indigent defendants. Former RCW 7.68.035 (2018), *amended by* LAWS OF 2023, ch. 449, § 1(4). Although the trial court did not expressly find that Othon was indigent under RCW 10.01.160(3), the State concedes that the crime victim penalty assessment should be stricken. We accept the State's concession and remand for the trial court to strike the crime victim penalty assessment from Othon's judgment and sentence.

## CONCLUSION

We affirm Othon's convictions but remand for the trial court to strike the crime victim penalty assessment from Othon's judgment and sentence.

No. 57656-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, J.

Cruser, C.J.