IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39787-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JULIAN HIPOLITO TORAL, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Julian Toral appeals from a conviction for possession of a controlled substance, methamphetamine, with intent to distribute. He argues that the State presented insufficient evidence to convict because the State only presented evidence of a large sum of methamphetamine and such evidence does not sustain a conviction for intent to deliver. Because the State presented additional evidence establishing an intent, we disagree and affirm the conviction. We, nonetheless, remand with directions to the Superior Court to strike the victim penalty assessment imposed on Toral at sentencing.

FACTS

This prosecution arises from a Spokane Police Department officer spotting controlled substances on the person of appellant Julian Toral. On April 3, 2022, Officer Tyler Heiman patrolled downtown Spokane on a bicycle. When he turned into an alley, Officer Heiman saw Julian Toral and Alicia Clark huddled behind a trash can. Toral's bent back leaned against the alley wall. Toral reached into his backpack and retrieved a

bag that appeared to Heiman to contain thirty to forty blue fentanyl pills, a drug Heiman often saw in downtown Spokane. Heiman lacked a field test kit, but later laboratory testing separated thirty-nine "very" light blue pills from ten light blue pills. Report of Proceedings (RP) at 248. The very light blue pills tested positive for fentanyl, xylazine, and acetaminophen. The light blue pills tested positive for para-fluorofentanyl and fentanyl.

As Officer Tyler Heiman watched, Alicia Clark handed Julian Toral a $10 bill and a scratch lottery ticket. When Toral and Clark noticed Heiman, Toral dropped the drug bag into his backpack and pulled out a gray Bluetooth speaker. Toral told Heiman he was selling Clark the speaker.

Officer Tyler Heiman arrested Julian Toral, who, according to Heiman, did not appear to be "acting like a mere user would" act. RP at 240. Alicia Clark, on the other hand, exhibited behavior consistent with drug use. Heiman searched Toral and his black backpack incident to arrest. In Toral's pocket, Heiman found a "slick" that contained what appeared to be fentanyl pills and a working digital scale with what looked like methamphetamine residue on it. RP at 216. A "slick" is a street term for a small rubber container used to store drugs. RP at 216. The pills inside the slick later tested positive for clonazepam. In Toral's backpack, Heiman discovered a substance inside a bag. Laboratory testing confirmed the bag contained 21.95 grams of methamphetamine.

2

PROCEDURE

The State of Washington charged Julian Toral with one count of possession of a controlled substance with intent to deliver fentanyl and one count of possession of a controlled substance with intent to deliver methamphetamine.

At trial, Officer Tyler Heiman testified that, based on his training and experience, methamphetamine sales entail small quantities packaged in small plastic bags. He opined that, on a daily basis, a typical methamphetamine user ingests less than a gram because of the potency of the drug. Because the drug tends to crumble, the seller packages fentanyl in a plastic bag, tin foil, or slick. When asked if he saw Toral with smaller individualized plastic baggies, cash, or a ledger to track drug sale transactions, Heiman replied in the negative. Heiman explained that the absence of cash was not unusual because drug users typically lack cash when purchasing drugs. According to Heiman, buyers purchase drugs using credit or trading EBT cards. "They trade basically anything that could be of value for drugs." RP at 239.

After the State of Washington rested, Julian Toral moved to dismiss the charges. Defense counsel argued that the State produced insufficient evidence to establish Toral's intent to deliver methamphetamine or fentanyl. The court denied the motion with respect to both charges. Regarding the methamphetamine-related charge, the trial court stated:

> And what tips the Court to find that when viewing this evidence in a light most favorable to the State, there is evidence that a reasonable—a trier-of-fact could reasonably determine or conclude that there is evidence

3

to sustain a verdict is the officer did testify that there was approximately 22 grams in Mr. Toral's possession, and generally a daily user would use less than one gram.

RP at 296. The court recognized that mere possession of methamphetamine does not establish intent. The court then explained:

> In this case, again, if it was just the scale or just the 22 grams, but the 22 grams together with the scale, which the scale could be used for personal use, but alternate explanations aren't going to defeat a finding in this matter. And so again, the officer observing the scale, the officer saying that less than a gram is normally used for personal use, the Court is going to deny the motion to dismiss on both counts, Count 1 and Count 2, based on that evidence, again, viewed in a light most favorable to the State at this proceeding.

RP at 298.

In addition to instructing the jury on the elements of the crimes charged, the trial court delivered instructions on the lesser included offenses of possession of a controlled substance both the methamphetamine and fentanyl counts. The jury found Julian Toral guilty as charged.

The trial court sentenced Julian Toral using an offender score of zero and imposed twelve months and a day for each offense to run concurrently. The court waived the DNA fee and criminal filing fee but imposed the $500 victim penalty assessment even though it found Toral indigent at sentencing.

On appeal, Julian Toral challenges his conviction for possession of methamphetamine with intent to deliver. He does not challenge his conviction for

4

possession of a fentanyl with intent to deliver. He also challenges the victim penalty

assessment. We affirm the conviction, but direct the trial court to vacate the assessment.

Possession with Intent to Deliver

Julian Toral impliedly concedes he may be guilty of possessing

methamphetamine, but he argues the State failed to prove he intended to deliver the

methamphetamine. According to Toral, the State does not establish the requisite intent to

deliver solely with testimony from a law enforcement officer that the amount of

methamphetamine found in an accused's possession was more than the normal amount

for personal use. We agree, but the State presented additional evidence to show the intent

to distribute.

We review insufficient evidence claims for whether, when viewing the evidence in

the light most favorable to the State, any rational trier of fact could have found the

essential elements of the charged crime beyond a reasonable doubt. *State v. Embry*, 171

Wn. App. 714, 742, 287 P.3d 648 (2012). Sufficiency challenges admit the truth of the

State's evidence and all reasonable inferences drawn from it. *State v. Embry*, 171 Wn.

App. 714, 742 (2012). In analyzing the sufficiency of evidence, this court does not treat

circumstantial evidence as less reliable than direct evidence. *State v. Delmarter*, 94

Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact with respect to issues

concerning witness credibility, conflicting testimony, and the persuasiveness of evidence.

*State v. Embry*, 171 Wn. App. 714, 742 (2012).

RCW 69.50.401(1) declares:

> [i]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

The State bears the burden of proving each element of the offense beyond a reasonable doubt. *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006). To prove Julian Toral possessed methamphetamine with the intent to deliver, as the name of the crime suggests, the State must establish that Toral possessed the controlled substance and that he possessed the drug with the intent of delivering it.

When the State charges possession with intent to deliver, the State must generally show intent by circumstantial evidence. *State v. Sprague*, 16 Wn. App. 2d 213, 233, 480 P.3d 471 (2021). Circumstantial evidence is not any less reliable or probative than direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). Inferences, however, based on circumstantial evidence must be reasonable and cannot be based on speculation. *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). Evidence that a defendant had the intent to deliver must be sufficiently compelling such that the intent is plainly indicated as a matter of logical probability. *State v. Sprague*, 16 Wn. App. 2d 213, 233 (2021).

Mere possession of a controlled substance, including quantities greater than needed for personal use, fails to support an inference of intent to deliver. *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010); *State v. Sprague*, 16 Wn. App.

2d 213, 233 (2021).  Washington courts require at least one additional factor that suggests an intent to deliver, such as a large amount of cash or sale paraphernalia.  *State v. O'Connor*, 155 Wn. App. 282, 290 (2010).

Julian Toral relies on *State v. Brown*, 68 Wn. App. 480, 843 P.2d 1098 (1993) and *State v. Davis*, 79 Wn. App. 591, 904 P.2d 306 (1995) to argue that possession of drug quantities greater than the amount for personal does not prove intent to deliver.  Toral also distinguishes the facts of his case from those in *State v. O'Connor*, 155 Wn. App. 282 (2010), *State v. Hotchkiss*, 1 Wn. App. 2d 275, 404 P.3d 629 (2017), and *State v. Campos*, 100 Wn. App. 218, 998 P.2d 893 (2000).  We review all of these decisions beginning with those unfavorable to Toral.

In *State v. Campos*, a jury convicted Gabriel Cisneros Campos with possession of cocaine with intent to deliver.  Law enforcement arrested Campos with 2.5 grams of cocaine in his possession, $1,750 in small denominations in one pocket, and $162 in his wallet.  Officers also seized a slip of paper with a column of numbers found in Campos' wallet.  In the truck Campos drove at the time of his arrest, officers found a bag containing 25 grams of cocaine under the front passenger seat, a pager, a cell phone, a charger for the phone, and a CD player with approximately twenty CDs.  The CD player belonged to the passenger of the truck.  The officers did not find any drug scale, drug bags, or other paraphernalia in the truck.  Campos appealed his conviction arguing

7

insufficient evidence established that he intended to deliver cocaine. This court disagreed.

In *State v. Campos*, this court relied on a variety of evidence to affirm Gabriel Campos' conviction. First, Campos possessed almost an ounce of cocaine, a significant amount, at the time of his arrest. A detective testified at trial that an ounce of cocaine matched the amount a dealer, rather than a user, would possess since users of the drug typically buy 3.5 grams or less. Second, Campos carried $1,750, a substantial amount of money, on his person. Third, Campos' arresting officer testified that the cell phone, cell phone charger, and pager found in Campos' truck are tools of the trade for drug dealers. Finally, the piece of paper found in Campos' wallet contained information indicative of a drug sales record.

In *State v. O'Connor*, 155 Wn. App. 282 (2010), a jury convicted Sean Joseph O'Connor of one count of manufacturing marijuana and one count of delivering marijuana. Police officers secured a search warrant for O'Connor's home based on an informant's tip. While searching his home, officers discovered 131 marijuana plants, six-and-a-half pounds of drying harvested marijuana, and a drug scale. At trial, an officer testified, based on his experience, the scale was used to weigh controlled substances and not for personal use. O'Connor appealed his convictions. He argued that insufficient evidence established he intended to deliver the marijuana. This court affirmed his

delivery conviction because the large amount of marijuana, the sophistication of the grow operation, and the drug scale sufficiently inferred an intent to deliver.

In *State v. Hotchkiss*, 1 Wn. App. 2d 275 (2017), Lafe William Hotchkiss was convicted of possession of a controlled substance with intent to deliver. While police officers executed a search warrant of Hotchkiss' residence, he admitted that he held an 8-ball, approximating 3.8 grams, of methamphetamine in a safe, and he provided the officers with the code to the safe. He further conceded he procured one 8-ball of methamphetamine every day. He then divided the 8-ball into tranches for ten customers. The officers discovered 8.1 grams of methamphetamine and $2,150 in cash in the safe.

Lafe Hotchkiss argued on appeal that, under the corpus delicti rule, the State lacked insufficient corroborating evidence independent of his incriminating statement to prove he intended to deliver methamphetamine. This court affirmed his conviction, while ruling that the quantity of the methamphetamine and the amount of cash in Hotchkiss' possession provided sufficient corroborating evidence of intent to deliver independent of Hotchkiss' incriminating statement to satisfy the corpus delicti rule.

In *State v. Brown*, 68 Wn. App. 480 (1993), Frank Brown was convicted of possession of cocaine with intent to deliver. At the time of his arrest, Brown possessed approximately twenty rocks of crack. The arresting officer testified at trial that most users only carry one to two pieces, and at most four pieces, of crack for personal use. Brown appealed his conviction, arguing insufficient evidence established he intended to

9

deliver cocaine. This court ruled that the arresting officer's testimony, that Brown possessed four-to-five times the amount of cocaine one would carry for personal use, failed to sustain Brown's conviction. The court highlighted that Brown did not possess scales, other drug paraphernalia, large amounts of cash, or crack rocks individually wrapped. Because no other evidence suggested he intended to sell or deliver the drugs, this court reversed the conviction.

In *State v. Davis*, 79 Wn. App. 591 (1995), Leroy Thomas Davis was convicted of possession of marijuana with intent to deliver. At the time of his arrest, Davis had in his possession six baggies of packaged marijuana, two baggies of seeds, a film canister containing marijuana, a baggie with marijuana residue in it, and a box of sandwich baggies. In total, Davis possessed 19 grams of marijuana. He did not possess any money, weighing scales, or other drug paraphernalia. Davis appealed his conviction, arguing that insufficient evidence established he intended to deliver the drug. This court agreed with Davis. In reversing his conviction, this court noted that 19 grams of marijuana is an amount that could be consumed in the course of normal personal use. The packaging was also consistent with personal use.

All five Washington decisions establish that the State cannot convict a defendant of possession of a controlled substance with intent to deliver based solely on evidence that he possessed a large amount of the drug. The State needs an additional factor indicative of a drug sale transaction. Julian Toral's possession of a working drug scale,

10

in addition to a large amount of methamphetamine, suffices to constitute that additional factor. The presence of the scale distinguishes Toral's prosecution from the prosecutions of Frank Brown and Leroy Davis. Also, laboratory testing confirmed residue found on Toral's scale to be methamphetamine.

Victim Penalty Assessment

Julian Toral argues the trial court erred in imposing the $500 victim penalty assessment at sentencing because he is indigent. A change in this state's law on criminal procedure took effect on July 1, 2023. Beginning on that day, Washington courts may no longer impose victim penalty assessments on a defendant "if the court finds that the defendant is indigent at the time of sentencing." FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 1169, at 2, 68th Leg., Reg. Sess. (Wash. 2023); *see* LAWS OF 2023, ch. 1169, §§ 1, 4.

Additionally:

> Upon motion, the court must waive any crime victim penalty assessment previously imposed against an adult defendant who does not have the ability to pay. A person does not have the ability to pay if the person is indigent.

FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 1169, at 2, 68th Leg., Reg. Sess. (Wash. 2023); *see* LAWS OF 2023, ch. 1169, §§ 1, 4. Courts apply a new rule for the conduct of criminal prosecutions to all cases pending on direct review or not yet final. *In re Personal Restraint of Eastmond*, 173 Wn.2d 632, 638, 272 P.3d 188 (2012).

Julian Toral filed his notice of appeal on June 15, 2023, and his appeal has yet to be decided. The trial court found Toral indigent at the time of sentencing. Therefore, the penalty must be vacated.

## CONCLUSIONS

Because sufficient evidence supports Julian Toral's conviction for possession of methamphetamine with intent to deliver, we affirm his conviction. We remand to the superior court to strike the victim penalty assessment from Toral's judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Lawrence-Berrey, C.J.                          Staab, J.