# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59406-4-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| DYLON LEE FAVRO, | |
| Appellant. | |

VELJACIC, A.C.J. — Dylon Favro appeals from his convictions for criminal impersonation in the first degree and possession of a controlled substance with intent to deliver. Favro argues that his charging document was insufficient, that the trial court allowed improper opinion testimony as to his guilt, that insufficient evidence supported his conviction for possession with intent to deliver, and that the trial court improperly commented on the evidence. Favro also alleges the trial court erred in not entering written findings of fact and conclusions of law regarding the admissibility of statements he made to law enforcement and erred in admitting those statements. Favro further argues that the court erred by requiring him to appear at sentencing from a holding cell. Lastly, Favro argues the court erred in determining which prior convictions counted toward his offender score calculation and that a juvenile adjudication was incorrectly calculated in his offender score.

We affirm Favro's convictions. With regard to Favro's sentence, we hold that the trial court erred by requiring Favro to appear at sentencing from a holding cell without conducting an

individualized inquiry to determine if such restraint was necessary. Accordingly, we reverse Favro's sentence and remand for resentencing. We do not address Favro's remaining sentencing argument as it can be addressed on remand.

FACTS[1]

I.   BACKGROUND

On June 27, 2021, Officer William Zimmerman responded to a call about a potentially stolen vehicle in a store parking lot. Zimmerman observed Favro driving a green Honda sedan through the parking lot. Favro parked the car and started walking toward Zimmerman as Zimmerman pulled into the parking lot.

Zimmerman asked Favro if he had any identification and Favro indicated he did not. Favro then told Zimmerman that his name was Steven Michael Favro, who is Favro's brother. Favro also stated that his date of birth was December 29, 1992. Zimmerman input this information into a law enforcement database and the physical descriptors it provided for Steven Michael Favro did not match Favro's physical descriptors. Favro was then taken into custody and purportedly read his *Miranda*[2] rights.

Favro agreed to speak with Zimmerman after being read his *Miranda* rights. Zimmerman asked Favro about the name Favro had given him, but Favro just "looked at the ground and shrugged his shoulders." Rep. of Proc. (RP) at 174. Zimmerman asked Favro if there was anything that he wanted him to retrieve from the vehicle he had been driving, and Favro asked for a wallet with cash that was in the backseat and a drink from a water bottle that was in the front passenger seat. Zimmerman retrieved the wallet, which contained $1,500.

---

[1] The majority of this factual account is taken from testimony elicited at trial.

[2] *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Deputy Geary Enbody, who responded to assist Zimmerman, went to retrieve the water bottle from the car and noticed more money in the center console—the console was either open slightly or broken such that Enbody could observe its contents from his vantage point. Because the windows on the vehicle could not be rolled up, the ignition wires had been tampered with, and officers could not contact the registered owner, the vehicle was impounded. Pursuant to impound, an inventory search was conducted to document the contents of the vehicle. While conducting the inventory search, Enbody discovered in the center console another wallet with Favro's identification in it, more cash, and a mason-type jar containing small blue pills with "M 30" written on them. RP at 228. Upon discovering the jar of pills, Enbody placed the jar back and ceased the inventory search, and Zimmerman applied for a warrant to search the vehicle.

Zimmerman and Corporal Jeff Gann searched the vehicle after obtaining a search warrant. Inside the vehicle, they discovered a glass jar that contained six small clear baggies that had a total of 50 "M 30" blue pills divided into the bags and $320 in cash. RP at 176. There was also a black case that contained empty small clear baggies and sheets of tinfoil. They also found documents belonging to Favro including his birth certificate and a copy of a screenshot of his driver's license as well as bank cards and EBT cards with Favro's name on them.

The State charged Favro with criminal impersonation in the first degree and possession with intent to deliver a controlled substance. Specifically, regarding the possession charge, the charging document stated that Favro "unlawfully and feloniously did possess with intent to deliver Fentanyl, a controlled substance, and did know it was a controlled substance, contrary to RCW 69.50.401(1), RCW 69.50.401(2)(a)." Clerk's Papers (CP) at 4.

II.     CrR 3.5 HEARING

Prior to trial, the State sought to admit Favro's statements to law enforcement. When asked if Favro wished to testify at the hearing, Favro's counsel stated the following:

> I've discussed it with Mr. Favro with respect to pre-*Miranda* statements,[3] there's really nothing to conte[s]t. It seems that was done pre-*Miranda*. Post-*Miranda* he's fine with not—you're fine with not testifying, correct? Yes?

RP at 149. Favro responded "Yeah." RP at 149. Favro did not move to exclude any specific statement made to officers and did not object to any statement being admitted.

Zimmerman testified that he made contact with Favro to investigate a potentially stolen vehicle and that he never told Favro he was not free to leave. Zimmerman stated that when he placed Favro in handcuffs to arrest him, he read him his *Miranda* rights from a department-issued card as he had done in his career over 100 times. Zimmerman stated that Favro indicated he would speak with him. Zimmerman did not have his department issued card with him during testimony and testified that he advised Favro of his right to remain silent and his right to an attorney and that these rights were the "gist" of what he advised Favro. RP at 143. Zimmerman did not testify that he advised Favro that anything he said could be used against him.

The trial court orally ruled that Favro's statements were admissible, stating:

> Based on the testimony before the Court, clearly 3.5 hearings are for any statements made post-*Miranda*. Mr. Zimmerman testified that he read Mr. Favro the *Miranda* rights that were given to him on his Department-issued card; that ultimately Mr. Favro agreed to speak with him and answer questions regarding his identity in the vehicle or things to do with the vehicle. There's been no showing to the Court that there is any reason to exclude those statements based on the totality of the evidence, and the statements would be admissible.

RP at 150. The court did not enter written findings of fact and conclusions of law.

---

[3] This pre-*Miranda* reference appears to incorporate the period during which Favro gave his brother's name when asked to identify himself.

III.    TRIAL

At trial, Favro's theory of the case was that the State could not prove the drugs belonged to him.  Zimmerman and Enbody testified about their interactions with Favro and the searches they conducted, as described above.  The State also presented testimony from forensic scientist, Lyndsey Knoy, who testified that she tested the blue pills recovered from the vehicle Favro was driving and that they contained acetaminophen and fentanyl.

Detective Derek Baker, who worked on the Crime Reductions Team and participated in over 100 drug investigations, testified that he was commonly involved in investigations regarding possession with intent to deliver and that his work often involved working with informants.  Baker testified that he had no prior experience with Favro, had no significant involvement with the case, and was not on scene for anything that occurred with the case.

Baker stated that when working with informants he frequently had conversations with them regarding current drug trends.  He explained that based on his training and experience, in June 2021, fentanyl was most commonly found in pill form.  Baker also testified that "blues" are "counterfeit oxycodone pills that are usually pressed with fentanyl and filled with some other substance.  They—it looked just like a regular oxycodone pill printed with an "M" and a "30" on each side."  RP at 261.

Baker testified that a typical personal use amount for "blues" would be anything under 50 but that the amount fluctuated.  Baker stated that in the course of investigating possession with intent to deliver cases, he looked for indicators, including

> packaging that's new or unused.  Usually drugs that are packaged individually, separated.  You'll have various quantities of pills in separate packaging.  You'll see quantities of cash.  Deals are often done in cash.  Sometimes you'll see scales, especially dealing with powder.  You'll also—sometimes you'll find ledgers documenting sales, things of that nature.

5

RP at 263. Baker also stated that fentanyl was most commonly packaged for sale in "little one-by-one Ziploc baggies" and that often there would be symbols on them. RP at 263. He commented that he had seen fentanyl wrapped up in grocery bags or foil.

IV.    JURY INSTRUCTION, VERDICT, AND SENTENCING

Regarding Favro's charge of criminal impersonation, Favro stipulated that he "acted with an intent to defraud Officer William Zimmerman." CP at 26.

The trial court submitted instructions to the jury including instruction 14, which stated, "Fentanyl is a controlled substance." CP at 44. Favro did not object to this instruction.

The jury found Favro guilty of criminal impersonation in the first degree and possession with intent to deliver a controlled substance.

At the sentencing hearing, Favro appeared from the holding cell at the Cowlitz County jail courtroom.[4] Nothing in the record suggests the trial court conducted an individualized inquiry to determine if such restraint was necessary.

The court determined that Favro's offender score was eight based on seven prior convictions and sentenced him to 72 months total confinement and 12 months of community custody.

Favro appeals.

ANALYSIS

We first address the sufficiency of Favro's charging document, the alleged improper expert testimony as to Favro's guilt, and whether sufficient evidence supported Favro's conviction for possession with intent to deliver a controlled substance. Next, we address the trial court's alleged

---

[4] There is no video recording of the sentencing hearing in the record. However, both parties agree Favro appeared at sentencing from the holding cell.

errors regarding the admission of Favro's statements to law enforcement. Then, we address whether it was error for the trial court to require Favro to appear at sentencing from a holding cell without conducting an individualized inquiry. Finally, because we are remanding for resentencing, we decline to address Favro's arguments that the court erred in determining which prior convictions counted in his offender score and whether the court incorrectly calculated a juvenile adjudication in his offender score.

I.      SUFFICIENCY OF CHARGING DOCUMENT

Favro argues the charging document was insufficient because it failed to include an essential element of possession with intent to deliver because it did not specify the classification of fentanyl. We disagree.

A.      Legal Principles

"An information is constitutionally adequate under the federal and state constitutions 'only if it sets forth all essential elements of the crime, statutory or otherwise, and the particular facts supporting them.'" *State v. Derri*, 199 Wn.2d 658, 691, 511 P.3d 1267 (2022) (quoting *State v. Hugdahl*, 195 Wn.2d 319, 324, 458 P.3d 760 (2020)); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; CrR 2.1(b). "A charging document must include all of the essential elements of the crime so that the defendant may have notice of the nature of the charge." *State v. Zillyette*, 173 Wn.2d 784, 785-86, 270 P.3d 589 (2012).

If a charging document (also referred to as an information) is challenged for the first time on appeal, "it is liberally construed in favor of validity." *Id.* at 786. To analyze the sufficiency of the charging document, we determine "whether the necessary facts appear, or can be found by fair construction, in the information. If so, the court then inquires whether the defendant was nonetheless prejudiced by the unartful language used in the information." *Id.* If the necessary

elements are not present or cannot be fairly implied, prejudice is presumed and reversal is required. *Id.* We review challenges to the sufficiency of a charging document de novo. *State v. Rivas*, 168 Wn. App. 882, 887, 278 P.3d 686 (2012).

The essential elements of possession with intent to deliver a controlled substance are: "(1) unlawful possession (2) with intent to deliver (3) a controlled substance." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010); RCW 69.50.401(1).

B.      Analysis

Here, the information stated that Favro "unlawfully and feloniously did possess with intent to deliver Fentanyl, a controlled substance, and did know it was a controlled substance, contrary to RCW 69.50.401(1), RCW 69.50.401(2)(a)." CP at 4.

As such, the information contained all the essential elements of possession with intent to deliver and adequately provided Favro with "notice of the nature of the charge" against him. *Zillyette*, 173 Wn.2d at 785-86. The information did not need to specify the classification of fentanyl as a Schedule II controlled substance. The information was sufficient to provide notice.

Favro does not argue he was prejudiced by inartful language, nevertheless, we conclude the language of the charging document was not inartful or confusing so as to prejudice Favro.[5]

II.      DETECTIVE BAKER'S TESTIMONY

Favro argues that Baker's testimony constituted an improper opinion as to his guilt. We disagree.

---

[5] Favro argues that because an element is missing from the charging document, prejudice is presumed. However, because we hold that no element is missing from the charging document, there is no presumed prejudice. Favro does not otherwise argue prejudice.

A.      Legal Principles

"The admission of evidence lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *State v. Brown*, 132 Wn.2d 529, 578, 940 P.2d 546 (1997).

ER 702 allows experts to testify on matters that will assist the trier of fact in understanding the evidence or determining a fact at issue. Simply because an expert's opinion may cover an issue the jury ultimately must decide does not mean the expert's opinion must be automatically excluded. *State v. Montgomery*, 163 Wn.2d 577, 590, 183 P.3d 267 (2008). To determine if opinion testimony is admissible, the trial court considers "the circumstances of the case, including the following factors: '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *Id.* at 591 (quotation marks omitted) (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)).

Generally, however, "no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant." *Demery*, 144 Wn.2d at 759. Such testimony is improper and unfairly prejudicial "because it 'invad[es] the exclusive province of the [jury].'" *Id.* (internal quotation marks omitted) (quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993)).

B.      Analysis

Here, while the court did not expressly address the factors explained above, upon review of the record, the trial court did not abuse its discretion in admitting Baker's testimony. Favro cannot show that Baker's testimony was an opinion on Favro's guilt. Baker testified to his training and experience generally in conducting drug investigations. He testified regarding the trends he

learned from working with informants and items that commonly indicate someone is engaged in unlawfully distributing a controlled substance. Favro was charged with possession with intent to deliver and generally argued that the State could not prove the drugs belonged to Favro. Accordingly, Baker's expert testimony would have assisted the jury in understanding the other evidence presented, including the items retrieved from the vehicle Favro was seen driving, but did not go so far as to opine on Favro's guilt. It remained for the jury to determine if the evidence retrieved from the car fit within the general patterns of drug sales Baker described and if it found this testimony to be credible.

Favro cites to *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987), in support of his argument. In *Black*, an expert testified that the victim suffered from rape victim syndrome, and the court stated that such testimony "carrie[d] with it an implied opinion that the alleged victim is telling the truth and was, in fact, raped." *Id.* at 349. The court concluded that such expert testimony "constitute[d], in essence, a statement that the defendant is guilty of the crime of rape." *Id.*

The case before us is at least one step removed because the expert, Detective Baker, testified about his experiences generally in investigating drug cases and working with informants to learn about current trends in distributing drugs. And while an opinion on an issue the jury ultimately must decide is not dispositive of improper testimony, as explained above, Baker did not offer an opinion on Favro's guilt, implied or otherwise. Baker never even testified about Favro specifically.

Unlike the witness in *Black*, the testimony here did not carry an implied opinion on the veracity of another witness, nor did it invade the province of the jury. It remained the exclusive province of the jury to make inferences and draw conclusions on the basis of Baker's testimony as

it related to the specific evidence discovered in the vehicle Favro was driving. Accordingly, the trial court did not abuse its discretion in admitting this testimony.

III.    SUFFICIENCY OF EVIDENCE AND ALLEGED IMPROPER COMMENTARY ON THE EVIDENCE

Favro argues insufficient evidence supported his conviction for possession of a controlled substance with intent to deliver because the State did not present any evidence that the fentanyl he possessed was either a Schedule I or Schedule II narcotic or flunitrazepam. He argues the classification of fentanyl was an essential element of the crime that was not proven to the jury.

Favro cites to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in this section of his brief for the proposition that "the classification language, because it dictates the minimum and maximum punishment of the offense, must be an element of the offense." Br. of Appellant at 24. Later, Favro references *Apprendi* for the proposition that facts other than the fact of a previous conviction must be found by a jury. He does not provide analysis specifically addressing whether the jury must find classification (though that may be his unstated suggestion), so we do not specifically address that point.

He also argues that the jury instruction stating that fentanyl was a controlled substance was improper judicial commentary on the evidence. We disagree.

A.    Sufficiency

1.    Legal Principles

In determining if a conviction is supported by sufficient evidence, "we view the evidence in the light most favorable to the State[] and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Stewart*, 12 Wn. App. 2d 236, 239, 457 P.3d 1213 (2020). A defendant challenging the sufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State*

11

*v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer "to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Killingsworth*, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

As explained above, "[t]he elements of possession of a controlled substance with intent to deliver under RCW 69.50.401(1) are (1) unlawful possession (2) with intent to deliver (3) a controlled substance." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). RCW 69.50.401(2)(a) further provides:

> (2) Any person who violates this section with respect to: (a) A controlled substance classified in Schedule I or II which is a narcotic drug or flunitrazepam, including its salts, isomers, and salts of isomers, classified in Schedule IV, is guilty of a class B felony and upon conviction may be imprisoned for not more than ten years, or (i) fined not more than twenty-five thousand dollars if the crime involved less than two kilograms of the drug, or both such imprisonment and fine; or (ii) if the crime involved two or more kilograms of the drug, then fined not more than one hundred thousand dollars for the first two kilograms and not more than fifty dollars for each gram in excess of two kilograms, or both such imprisonment and fine.

RCW 69.50.206(c)(9) specifically classifies fentanyl as a Schedule II controlled substance.

Merely possessing a controlled substance in an amount greater than for personal use is insufficient to show an intent to deliver. *State v. Sprague*, 16 Wn. App. 2d 213, 233, 480 P.3d 471 (2021). Rather, "[a]t least one additional fact must exist" that suggests the defendant had intent to deliver. *O'Connor*, 155 Wn. App. at 290 (noting that "a large amount of cash or sale paraphernalia" would satisfy this requirement).

2.    Analysis

Here, the State presented evidence, exclusive of any statements by Favro, that the vehicle Favro was seen driving contained numerous documents with his identification, a large amount of cash, blue pills packaged into small plastic bags with additional baggies and tinfoil in a separate black case. A forensic scientist testified that the pills contained fentanyl. Baker also testified that,

at the time, fentanyl was most commonly distributed in pill form and that common indications of sales included items such as cash and separately packaged pills in baggies or foil, the very items found near where Favro was seated.

Viewing this evidence in the light most favorable to the State, a rational fact finder could have found the elements of possession with intent to deliver beyond a reasonable doubt. The legal classification of the controlled substance, fentanyl, as a schedule I or schedule II narcotic or flunitrazepam is not an element of possession with intent to deliver; therefore, the State did not need to prove this to the jury. Rather, the classification of fentanyl by statute as a schedule II controlled substance is a pure legal question. RCW 69.50.206(c)(9).

B. Judicial Commentary on the Evidence

1. Legal Principles

Article 4, section 16, of the Washington Constitution states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." The purpose in prohibiting judicial commentary on the evidence "is to prevent the [] judge's opinion from influencing the jury." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). "A jury instruction can constitute a comment on the evidence if it reveals the court's attitude toward the merits of the case, or the court's evaluation of a disputed issue." *State v. Hermann*, 138 Wn. App. 596, 606, 158 P.3d 96 (2007). If the defendant shows that the trial court has commented on the evidence, it then becomes the State's burden to establish that the defendant was not prejudiced by that commentary. *Id.*

2. Analysis

Here, the jury instruction stating that fentanyl was a controlled substance was not improper commentary on the evidence as it stated the law, pursuant to RCW 69.50.206(c)(9); it did not

reveal the court's attitude toward the merits of the case or the court's evaluation of a disputed issue.

IV.    CrR 3.5 HEARING AND THE ADMISSION OF FAVRO'S STATEMENTS

A.    We Review in Spite of Trial Court's Failure to Make Written Findings

Favro argues that because the trial court failed to enter written findings of fact and conclusions of law regarding the CrR 3.5 hearing, reversal is required. We conclude the court's oral findings are sufficient to allow review.

Even if we assume without deciding that the trial court erred in its CrR 3.5 ruling, Favro waived any challenge to his pre-*Miranda* statements that relate to his criminal impersonation conviction. For the post-*Miranda* statements, any error was harmless.

1.    Legal Principles

Under CrR 3.5(a), before admitting a defendant's statements into evidence, the trial court must conduct an admissibility hearing. This requirement is intended to prevent "the admission of involuntary, incriminating statements." *State v. Williams*, 137 Wn.2d 746, 751, 975 P.2d 963 (1999) (emphasis omitted). CrR 3.5(c) requires the court to make written findings of fact and conclusions of law after the admissibility hearing, and failure to do so is error. *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994). Failure to make written findings and conclusions is harmless, however, if the court's "oral findings are sufficient to allow appellate review." *Id.*

2.    Analysis

In its oral ruling at the CrR 3.5 hearing, the trial court found that, based on Zimmerman's testimony, "he read Mr. Favro the *Miranda* rights that were given to him on his Department-issued card; that ultimately Mr. Favro agreed to speak with him and answer questions regarding his identity in the vehicle or things to do with the vehicle." RP at 150. Accordingly, the court

concluded, "There's been no showing to the Court that there is any reason to exclude those statements based on the totality of the evidence, and the statements would be admissible." RP at 150.

These oral findings and conclusions regarding the admissibility of Favro's statements to law enforcement are sufficient to enable appellate review; therefore, the court's failure to enter written findings of fact and conclusions of law was harmless.

B.      Even if Admission of Favro's Statements was Erroneous, It was Harmless.

Favro argues that the trial court erred in admitting his pre- and post-*Miranda* statements to law enforcement. The State argues that under RAP 2.5,[6] we should not address both of these arguments because Favro did not object below and cannot show a manifest constitutional error occurred. We conclude that Favro explicitly waived any challenge to his pre-*Miranda* statements that relate to his criminal impersonation conviction.

Regarding the admission of his post-*Miranda* statements. the issue was preserved for review because the trial court held a CrR 3.5 hearing, took argument from the parties, and rendered a decision. Therefore, RAP 2.5 does not preclude our review.

We conclude that, assuming without deciding that the trial court erred in admitting Favro's post-*Miranda* statements, any error was harmless.

1.      Pre-*Miranda* Statements

Favro waived his challenge to any statements he made before Zimmerman read him his *Miranda* rights. At the CrR 3.5 hearing, Favro's counsel stated "with respect to pre-*Miranda*

---

[6] Pursuant to RAP 2.5(a), we "will generally not consider issues raised for the first time on appeal." *Williams*, 137 Wn.2d at 749. A claimed error "may be raised for the first time on appeal if it is a 'manifest error affecting a constitutional right.'" *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) (quoting RAP 2.5(a)(3)).

statements, there's really nothing to conte[s]t." RP at 149. Accordingly, Favro consented to the admission of his pre-*Miranda* statements in which he provided a name and date of birth to Zimmerman, and the trial court did not err in admitting them. Favro cannot now challenge the admission of his pre-*Miranda* statements.[7]

2. Post-*Miranda* Statements

As to the statements Favro made after allegedly receiving *Miranda* warnings, even assuming without deciding that the admission of these statements was erroneous, any such error was harmless.

"[A]dmission of a[] [statement] obtained in violation of *Miranda* is subject to treatment as harmless error." *State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177 (1991). "To find an error affecting a constitutional right harmless, the reviewing court must find it harmless beyond a reasonable doubt." *Id.* A court assessing whether an error is harmless considers "(1) the corrosive impact of the constitutional error (here, the improperly admitted evidence), including its impact on how the fact finder might consider even the properly admitted evidence, as well as (2) the strength of the properly admitted evidence of guilt." *State v. Magana-Arevalo*, ___ Wn.3d ___, 582 P.3d 330, 334 (2026).

Here, even assuming the trial court erred in admitting Favro's post-*Miranda* statements, we conclude such error was harmless beyond a reasonable doubt. Specifically, at trial Zimmerman testified that after being read his *Miranda* rights Favro "looked at the ground and shrugged his

---

[7] Favro appears to suggest, without analysis, that exclusion of his pre-*Miranda* statements would eliminate the evidence that supported his conviction for criminal impersonation because his statements were the conduct that formed the basis for the crime. Because we conclude he waived challenge to those statements, and they were properly admitted, we need not engage in a sufficiency analysis. Even so, evaluating sufficiency out of an abundance of caution, we conclude that his statement and his stipulation to use of the statement with intent to defraud provide sufficient evidence of the crime.

shoulders" when asked about the name he gave police, and then asked for a wallet to be retrieved from the car. RP at 174. The corrosive impact of improperly admitting this evidence was minimal, given that other evidence thoroughly established the elements of criminal impersonation in the first degree, and the fentanyl was found separately from the search to retrieve the first wallet. Although Zimmerman did testify that the wallet he retrieved for Favro contained $1,500, that detail alone did not taint the properly admitted evidence. Considering the strength of the properly admitted evidence outlined in section III. B. above,[8] that evidence is sufficient to support the conviction for possession with intent to deliver a controlled substance despite the corrosive impact of the constitutional error. Therefore, the trial court's admission of Favro's statements was harmless.

V.    FAVRO'S APPEARANCE IN HOLDING CELL AT SENTENCING

Favro argues that the trial court violated his due process rights by requiring him to appear at sentencing from a holding cell without conducting an individualized inquiry to determine if such restraint was necessary. Favro argues he is therefore entitled to resentencing. We agree.

A.    Legal Principles

"A defendant's right to appear in court free from unjustified restraints is well established as a matter of federal and state due process law." *State v. Luthi*, 3 Wn.3d 249, 256, 549 P.3d 712 (2024). As our Supreme Court recognized in *Luthi*, requiring the defendant to appear at their Mental Health Sentencing Alternative (MHSA) revocation hearing from "the in-court holding cell

---

[8] As explained above, the State presented evidence, exclusive of Favro statements, that the vehicle Favro was seen driving contained documents with his identification, $320 in cash in the second wallet, blue pills packaged into small plastic bags with additional baggies and tinfoil in a separate black case. A forensic scientist testified that the pills contained fentanyl. An expert also testified that, at the time of Favro's arrest, fentanyl was most commonly sold in pill form and that common indications of sales included items like cash and separately packaged pills in baggies or foil.

at the Cowlitz County Jail courtroom raises the same due process concerns as other courtroom restraints, and controlling precedent recognizes that a defendant is entitled to due process at every courtroom appearance, not just jury trials." *Id.* at 263. The Supreme Court held that the trial court's failure to conduct an individualized inquiry into whether such restraint was necessary was constitutional error and remanded for a new hearing. *Id.* at 263-64. Notably, the Supreme Court reaffirmed "that trial courts *must* engage in an individualized inquiry before *every* hearing to determine whether there are extraordinary circumstances justifying courtroom restraints for security reasons." *Id.* at 265.

Once a defendant establishes a constitutional error, it is "presumed to be prejudicial and the State bears the burden of proving that the error was harmless." *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007).

B.      Analysis

Here, while there is no video recording of Favro's sentencing hearing in the record,[9] Favro argues, and the State concedes, that Favro appeared at his sentencing hearing from a holding cell. There is no evidence in the record that the trial court conducted an individualized inquiry into whether such restraint was necessary for security reasons. Therefore, like *Luthi*, because the court failed to conduct this inquiry, Favro's appearance from the in-court holding cell violated his constitutional right to due process. The State apparently concedes this error but argues that it was harmless.

The State attempts to argue that this error was harmless by distinguishing *Luthi* from the facts of the present case by pointing out that, unlike Luthi, Favro cannot show that he had difficulty

---

[9] There remains no video recording of the sentencing hearing in the record. However, both parties agree Favro appeared at sentencing from the holding cell.

communicating with his attorney or the trial court, and that "[t]he presumption of innocence had passed for Favro as he was convicted by a jury." Br. of Resp't at 47. The State essentially suggests it is Favro's burden to show how he was prejudiced.

As the *Luthi* court explained, however, an individualized inquiry is required "before *every* hearing to determine whether there are extraordinary circumstances justifying courtroom restraints." *Luthi*, 3 Wn.3d at 265. The *Luthi* court did not limit its holding to only those hearings in which guilt is determined. *See id*. The fact that Favro appeared from the in-court holding cell at his sentencing hearing as opposed to a MHSA revocation hearing, like in *Luthi*, is irrelevant. Further, the fact that nothing in the record overtly suggests Favro had trouble communicating with his attorney or the court is also immaterial, as the record does not shed light on whether Favro's counsel was even in close proximity to him during the hearing.

The State's arguments fail to "'overcome the presumption of prejudice when a constitutional right of the defendant is violated.'" *State v. Jackson*, 195 Wn.2d 841, 855, 467 P.3d 97 (2020) (quoting *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001)). Therefore, Favro is entitled to a new sentencing hearing.

## VI. FACTS IN OFFENDER SCORE NOT FOUND BY JURY

Favro argues, pursuant to *Erlinger v. United States*, 602 U.S. 821, 828, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024), that the trial court erred by determining which of his prior convictions counted toward his offender score. We disagree.

Washington courts have held that *Erlinger* is limited specifically to the "different occasions" inquiry under the federal Armed Career Criminal Act and does not overrule existing Washington precedent. *State v. Frieday*, 33 Wn. App. 2d 719, 747, 565 P.3d 139 (2025); *State v.*

*Anderson*, 31 Wn. App. 2d 668, 681, 552 P.3d 803, *review denied*, 3 Wn.3d 1034 (2024). We agree that *Erlinger* does not overrule existing Washington precedent. Favro's argument fails.

Because we remand for resentencing, we do not address Favro's other sentencing argument, as it can be addressed on remand.

CONCLUSION

We affirm Favro's convictions. Because the trial court erred in requiring Favro to appear at sentencing from a holding cell without conducting an individualized inquiry into whether such restraint was necessary, we reverse Favro's sentence and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Glasgow, J.